## THE STATE *vs.* WALLACE.

On an indictment for adultery, a copy of the record of the marriage, from the town clerk's office, duly certified, with proof of the identity of the party, is competent evidence.

Evidence of improper familiarity between the parties accused, a short time previous to the act charged, is admissible, in corroboration of other evidence.

An unmarried man, who has unlawful intercourse with a married woman, from which spurious issue may arise, is guilty of adultery.

INDICTMENT against the respondent, for committing the crime of adultery with one Huldah Vittum, the wife of Amasa C. Vittum, of Sandwich, August 10, 1837. To prove the marriage of Huldah Vittum with said Amasa, the government introduced a copy from the records of Sandwich, duly certified, which is as follows : " Mr. Amasa C. Vittum, and Miss Huldah Wallace, both of Sandwich, were married January 31, 1828, by Jeremiah Furber, Justice Peace. Recorded March 31, 1828, by Charles White, Town Clerk." There was evidence that Huldah Vittum was formerly known by the name of Huldah Wallace, and that said Huldah, and Amasa C. Vittum, had lived together for some years, as husband and wife. The respondent objected that the paper purporting to be a certificate and record of the marriage was not proper proof of the fact.

There was the evidence of one witness to improper familiarities between the respondent and said Huldah, about the first of August, 1837 ; and the evidence of another witness to an act of adultery, subsequently, in the same month.

The respondent objected to the testimony of the first witness, but it was admitted. The respondent farther objected that he was at the time an unmarried man, and therefore not indictable for adultery ; but the objection was overruled.

The jury returned a verdict that the respondent was guilty, and he moved for a new trial.

*Hobbs,* and *Bartlett,* for the respondent, to show that the evidence of the marriage was inadmissable, cited 1 *Stark. Ev.* 102, 389 ; *N. H. Laws* 173 ; 9 *Mass. R.* 492, *Com'th* vs. *Norcross ;* 15 *Mass.* 163, *Com'th* vs. *Littlejohn & a. ;* 7 *Mass.* 48, *Milford* vs. *Worcester ;* 2 *Stark. Ev.* 437 ; 7 *Greenl.* 57, *Cayford's case ;* 11 *Mass.* 92, *Ellis* vs. *Ellis ;* and in support of the objection to the evidence of improper familiarity, 1 *Phil. Ev.* 135. Upon the point, that the respondent, being unmarried, was not guilty of adultery, they cited 2 *N. H. R.* 268, *Londonderry* vs. *Chester ; Mass. Laws* 244, (*ed.* 1788) ; 6 *Dane's Abr., ch.* 198, *art.* 9, *sects.* 1–9 ; *Prov. Laws* 10 ; *N. H. Laws* 335, (*ed.* 1815 ;) *N. H. Laws* 147 ; *Rees' Cyclopedia, Tomlin's Law Dic.* and other *Dictionaries—title, Adultery.*

*Gove,* A. G., for the state, cited, to the first point, 2 *N. H. R.* 268 ; 1 *Swift's Dig.* 756 ; 2 *Swift* 343 ; *Peake's Ev.* 23 ; *Gilb. Ev.* 9 ; 2 *Bingham* 229, *Richardson* vs. *Mellish ; Roscoe's Crim. Ev.* 229 ; 2 *Stark. Ev.* 429 ; 4 *Burr.* 2257, *Rex* vs. *Praed and Edwards ;* 1 *Esp. N. P. R.* 353, *Leader* vs. *Barry ; ditto* 213, *Read* vs. *Passer ; ditto* 197, *Doe* vs. *Madox ;* 7 *Green.* 57, *Cayford's case ;* 7 *Mass.* 48. To the second point, 2 *Stark. Ev.* 440 ; 2 *Yeates* 466, *Gardner* vs. *Madeira ;* 8 *State Trials* 35 ; 14 *Pick.* 518, *Com'th* vs. *Merriam.* To the third, *Jac. Law Dic., title, Adultery.*

PARKER, C. J. The evidence of the marriage was sufficient. The legislature, in requiring marriages to be recorded by the town clerk, intended the record should be evidence

of the fact.　8 *Greenl.* 75, *Wedgewood's case.*　There must be some evidence, in addition, of identity.　That was furnished, in this case, by the testimony that Huldah Vittum was formerly known as Huldah Wallace, and that she and Amasa C. Vittum had cohabited as husband and wife for several years.

The testimony respecting improper familiarities, prior to the act of adultery proved, was admissible, being in support and confirmation of the direct evidence.　It had a tendency to render it more probable that the act charged in the indictment was committed, showing as it did an approach towards the commission of the offence ; and of course it had a tendency to prove the fact.　Illustrations will at once occur.　If a defendant is indicted for breaking open a store, or stealing a horse, evidence that he was seen lurking about the store, or stable, a short time previous, would have a tendency to show him guilty, and would therefore be admissible with other evidence.　*The Commonwealth* vs. *Merriam,* 14 *Pick.* 518, is an authority on this point, except that in that case there was an attempt to impeach the witness, who gave more direct evidence of the act of adultery.　But the admissibility of the testimony does not depend upon the attempt to impeach the witness who gives direct evidence, but upon its tendency to establish the fact itself.　2 *Stark. Ev.* 440 ; 2 *Yeates* 466.

Nor is the respondent entitled to an acquittal, upon the ground that he is an unmarried man.　Adultery is committed whenever there is an intercourse from which spurious issue may arise ; and it is very clear that by our laws both parties to such intercourse are guilty of that crime.　There is not only no reason for any distinction between a married and single man, where the intercourse is with a married woman, but the statutes prior to 1829 would have left such intercourse, on the part of an unmarried man, unpunishable, criminally, except perhaps as an assault, if it was not deemed adultery.　This certainly was never intended.　The pro-

vincial statute of 1701, for the punishment of the crime, did not define adultery. Its language is, " if any man shall commit adultery, the man and woman that shall be convicted," &c. *Prov. Laws* 10. Nor did the statute of February 15, 1791, define the offence. " Any man or woman who shall commit adultery," &c. *N. H. Laws (ed.* 1815) 335.

Another provincial statute, of 1701, enacted, that " if any man commit fornication with any single woman, upon due conviction thereof they shall both be fined," &c. *Prov. Laws* 17. The language of the act of February 16, 1791, upon this subject, is, " if any man shall commit fornication with any single woman, and be thereof convicted, every person so offending shall be fined," &c., " provided, always, that in this case the oath of the woman only shall not be considered as sufficient evidence to convict the man." These were the only statutes upon the subject prior to 1829 ; and the intercourse of a single man with a married woman was clearly not within the second class. There can be no doubt, therefore, that it was deemed to be within the first.

It was held that the statute of February 16, 1791, provided no punishment for the unmarried female, and that she could not, therefore, maintain an action for an aspersion of her character in that particular, without showing special damage. 3 *N. H. R.* 194, *Woodbury* vs. *Thompson.* It was for this reason, perhaps, as much as any other, that the statute of January 2, 1829, provided for the punishment of fornication in general terms, rendering both parties to it liable to conviction.

In civil actions by the husband, also, it is said there must be proof of the "adultery," and no distinction is made between a married and an unmarried defendant. 2 *Stark Ev.* 438, 440. This alone would not be very conclusive, but it may serve to show the meaning attached to the term. So where it is said that when a man finds another committing adultery with his wife, and kills him in the first transport of passion, it is only manslaughter, (*T. Raym.* 212 ; 2 *East's P. C.*

234,) it is not to be understood that it would be a different crime if the party was an unmarried man.

The statute relative to divorces specifies adultery, in either of the parties, as one of the causes of divorce; and for this purpose, intercourse by a married man with an unmarried female is always held to be adultery. The reason of the case points clearly to such a construction, for the offence of the husband against the wife does not depend upon the question whether a married or single woman was the participator.

Whether the intercourse of a married man with an unmarried female can be held to be adultery in either of the parties, within the statute for the punishment of adultery, does not seem to be settled in this state. On the part of the man it would be clearly within some of the definitions of that crime, and perhaps it has generally been so regarded; but upon this it is not necessary to express an opinion.