94 N.J. Super. 47 (1967)
226 A.2d 745
MARGARET MELIA, PLAINTIFF,
v.
LARRY A. MELIA, A/K/A LAWRENCE A. MELIA, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided February 7, 1967.
*49 Mr. Mario V. Farco, attorney for plaintiff.
Mr. Irvin L. Solondz, attorney for defendant.
CONSODINE, J.C.C. (temporarily assigned).
Does voluntary and continued addiction to heroin over a period of years, by a dissipator as opposed to a medically adduced addict, with resultant attrition of sexual powers and the refusal of sexual intercourse, warrant an absolute divorce on the ground of extreme cruelty?
Plaintiff sued for divorce on the ground of extreme cruelty. She proved defendant's sexual inability and refusal as a concomitant of volitional and continued heavy heroin addiction, and his rejection of all aid toward overcoming the habit. The result is that her health has been impaired and her life made one of such extreme discomfort and wretchedness as to incapacitate her physically and mentally from discharging her duties as a wife and a mother.
Extreme cruelty, in those words, became a ground for divorce a vinculo by statutory amendment, L. 1923, c. 187, § 1, Suppl. to L. 1907, c. 216 (N.J.S. 2A:34-2). Previously, only a divorce a mensa et thoro could be had on that ground. Act of December 2, 1794, Paterson's Laws 143. Like any organic act, expressed in generality and infused with large social objectives, the specific content of Divorce Act language was designed to grow with the evolving insights and needs of the times. See Stephenson v. Stephenson, 102 N.J. Eq. 50, (E. & A. 1927); Hofman v. Hofman, 108 N.J. Eq. 161 (Ch. 1931).
Generally it has been said: "The shorter the Law is, the more general must its language be and the greater its need for interpretation." Bryce, The American Commonwealth, 372 (1897).
It has always been the rule that the grounds for divorce are not closed categories. They must be understood *50 liberally to the end that marriage may fulfill both human needs and social obligations. This flexible dimension of extreme cruelty as a ground for absolute divorce has been confirmed many times. It was long ago decided that the recognition of new causes of extreme cruelty (in that case conduct induced by habitual drunkenness) does not amount to a new cause for divorce. McVickar v. McVickar, 46 N.J. Eq. 490, 497 (Ch. 1890).
For more recent instances, see Capozzoli v. Capozzoli, 1 N.J. 540 (1949) (unreasonable sexual demands); MacArthur v. MacArthur, 135 N.J. Eq. 215 (E. & A. 1944) (malicious and wanton charges of infidelity); Golden v. Arons, 36 N.J. Super. 371 (Ch. Div. 1955) (imposition of religious fanaticism); H. v. H., 59 N.J. Super. 227 (App. Div. 1959) (homoerotism); Stolov v. Stolov, 50 N.J. Super. 178 (App. Div. 1958) (malevolence and sadism resulting in serious neurotic state); A. v. A., 87 N.J. Super. 440 (Ch. Div. 1965) (onanism).
Conditions which, by modern understanding, abort the human and social objects of marriage are essentially incompatible with the public purposes of marriage. First among these purposes is procreation of the human race, as the fruit of a consensual, libidinal and instinctual relationship. See Lindquist v. Lindquist, 130 N.J. Eq. 11 (E. & A. 1941); Houlahan v. Horzepa, 46 N.J. Super. 583 (Ch. Div. 1957); Bishop, New Commentaries on Marriage, Divorce and Separation, §§ 11, 13 (1891).
Rejection of sex, however it may be accomplished, can turn marriage from a benediction and a fulfillment into a nightmare of frustration, despair and decay. That has been plaintiff's tormented experience. Without self-justification, defendant explains his sexual torpor and denial by saying that he did not love his wife less but loved heroin more.
The touchstone of extreme cruelty is its impact upon the victim. See Friedman v. Friedman, 37 N.J. Super. 52 (App. Div. 1955), which so clearly defines the controlling standard. Given harm of the prescribed degree, willfully or *51 indifferently inflicted through behavior having an accepted causal nexus, and a case of extreme cruelty is made out. This principle differentiates such cases as Gilson v. Gilson, 113 N.J. Eq. 32, 36 (E. & A. 1933), where it was observed that the refusal of sexual relations is not extreme cruelty but rather desertion. See: Annotation, "Refusal of Sexual Intercourse as Grounds for Divorce," 175 A.L.R. 708 (1948).
In modern understanding, a nerve-wracking marriage in a setting of unremitting drug addiction, with sexual separation and denial as a principal consequence, can be extreme cruelty in character and result. See Nunes v. Nunes, 62 Cal.2d 33, 41 Cal. Rptr. 5, 396 P.2d 37 (Cal. Sup. Ct. 1964); Annotation, "Drunkenness, Habitual Intemperance or Use of Drugs as Constituting Cruelty as a Ground for Divorce," 76 A.L.R.2d 419 (1961). It has been evident, ever since Dominik v. Dominik, 7 N.J. 198 (1951), that the denial of sexual relations may qualify as extreme cruelty, where the period is more than transitory and there is evidence of any substantial damage to the plaintiff's health. Cf. Morrone v. Morrone, 44 N.J. Super. 305, 310 (App. Div. 1957), where in recognizing that habitual drunkenness alone is not a ground for divorce, the court affirmed that conduct induced by drunkenness was extreme cruelty if it had the requisite minimum injurious impact on the other spouse.
Heroin, in the vernacular known as "the little white hag," is produced by a change in the structure of morphine. It is used by 90% of drug addicts in the United States. Production and prescription of heroin are illegal. It is available only through illicit channels after smuggling from foreign countries.
Authorities recording objective scientific observation generally confirm the relation between drug addiction and sexual indifference and rejection which plaintiff charges. There are only individual exceptions to the findings. See Maurer and Vogel, Narcotics and Narcotic Addiction, 72 (1954) (general tendency to reduce or obliterate sexual desire); Schur, Narcotic Addiction in Britain & America, 127, 128 (1962) *52 (inhibition of the sexual function interferes seriously with normal marital relationship); Nyswander et al., The Drug Addict as a Patient, 46 (1956) (sexual difficulties invariably occur to the addict; there is a complete lack of interest in sex which frequently persists even when the addict is off drugs after a prison term of two or three years); Kron and Brown, Mainline to Nowhere  The Making of a Heroin Addict, 153 (1963) (marriage in the life of an addict  if it takes place at all  is a very transitory episode); Wilner and Kassebaum, Narcotics, 41 (1965), citing Eisenman, Fraser and Brooks, "Urinary Excretion and Plasma Levels of 17 Hydroxycortico-Steroids During a Cycle of Addiction to Morphine," 132 J. Pharmacol., Exp. Therap., 226 (1961) (observations of biochemical change in the maintained addict demonstrate that the decline in sexual drive and activity consistently reported by addicts has a definite physiologic basis); Chein, Gerard, Lee and Rosenfeld, The Road to H, 357, 358 (1964) ("with regard to effects on sexuality, the effect of the opiates is to diminish, if not do away with, sexual appetite. The addict `loses his nature'"); Brown, The Enigma of Drug Addiction, 39 (1961) (the addict is possessed of only one fervent objective  the ways and means of obtaining his next shot of heroin); Kolb, "Drug Addiction, A Study of Some Medical Cases," 20 Archives of Neurology & Psychiatry, 171, 183 (1928) (reduction or elimination of sexual desire tends to remove the opiate addict from the category of psychopathic sex offenders).
Our case law on the subject is sparse. In Germain v. Germain, 20 N.J. Super. 565 (Ch. Div. 1952), the question was whether the habitual use of drugs and the alleged consequences were sufficiently related by proof. For want of an adequate probative demonstration, a divorce on the ground of extreme cruelty was denied.
Here the proof entirely suffices to bring the case within the four corners of the exposition of extreme cruelty in Friedman v. Friedman, supra. Enter judgment nisi.