Accordingly, plaintiff's claims against the Union are barred by the six month limitation period which governs under federal law. If the Union and its officers had any obligation to plaintiff concerning his alleged problem, it must have arisen before he departed the company in June 1989. Giving plaintiff the benefit of all doubts concerning the facts he alleges, the latest date for filing an action against his Union representatives based on an alleged breach of the duty of fair representation can be placed six months thereafter, *i.e.*, at the end of 1989. Plaintiff's Complaint in fact was not filed until June 25, 1991, almost two years after the date of his resignation, and eighteen months too late under the applicable limitation period. The claims of both plaintiff Richard Hrabinski and his wife Deborah Hrabinski (which are clearly derivative in nature) are thus time-barred, and summary judgment dismissing the Complaint will be granted in favor of the defendant Union and its officials.

609 A.2d 124

S.B., PLAINTIFF, v. S.J.B., DEFENDANT.

Superior Court of New Jersey
Chancery Division Family Part
Monmouth County

Decided March 20, 1992.

*Harvey Blaustein*, Attorney for Plaintiff.
*Randee Pomerantz*, Attorney for Defendant.

FELDMAN, J.S.C.

Does a homosexual relationship constitute adultery? The court rules that it does.

In this divorce case, the husband has filed a counterclaim alleging that his wife has entered into a lesbian relationship and that this involvement constitutes adultery. The wife, besides denying the allegations, states that assuming arguendo that the allegations are true, a non-heterosexual relationship does not constitute adultery.

Not surprisingly, there is not a considerable body of prior law to draw upon but a review of both legal and social principles must lead one to the conclusion that adultery exists irrespective of the sex of the third party.

*N.J.S.A.* 2A:34–2 lists the various grounds for divorce; the first of which is "adultery", a term not defined in the statute. According to Black's Law Dictionary the historic legal definition of "adultery" is an act of sexual intercourse by a married person with another person other than one's spouse. Prior case law in New Jersey follows the prevailing view that an actual act of sexual intercourse must take place in order for adultery to exist. In *W. v. W.,* 94 *N.J.Super.* 121, 226 *A.*2d 860 (Ch.Div. 1967) the court ruled that given the clear evidence of the physical inability of the wife to engage in intercourse, it would be impossible for her to commit adultery.

In *H. v. H.,* 59 *N.J.Super.* 227, 157 *A.*2d 721 (App.Div.1959) a complaint for divorce on the dual grounds of adultery and extreme cruelty was filed based upon the wife's lesbian relationship. The adultery count was voluntarily dismissed at trial and the alleged acts were found to constitute a cause of action for divorce on the grounds of extreme cruelty.

To better understand the underlying issue it is helpful to briefly review both the legal and social standards and to distinguish between adultery as a crime as opposed to a private civil wrong.

The seventh commandment states that "Thou shall not commit adultery" *Exodus* 20:14. A biblical definition of "Adultery" is "the lying with a woman married to a husband". *See Deuteronomy* 22:22 and *Leviticus,* 20:10. The penalty for this crime was death for both the adulterer and adulteress. Historically, there could only be adultery if the woman was married. The marital status of the male was irrelevant. If a married man be "lying with a woman not betrothed" the biblical crime was fornication and punished by a fine of 50 shekels of silver. *Deuteronomy* 22:29. (The commentators generally opine that

even the thought of adultery was an offense under the biblical code, an issue which we need not deal with today.)

Under the common law adultery was treated as a violation of civil law. According to Blackstone it is "the criminal conversation with a man's wife"; a definition not far removed from the biblical context. 3 Black, Com. 140. Puritan England also established adultery (intercourse with a married woman) as a felony punishable by death. While New Jersey never treated the issue with that degree of severity the crime of adultery "shall be punished by a fine not exceeding one hundred dollars or imprisonment not exceeding 6 months". *Revised laws* 1799, 248–14. (Section 15 of that law punished "fornication" by a fine of only fourteen dollars.) *N.J.S.A.* 2A:88–1 until its repeal in 1978 deemed adultery (a non-defined term) to be a misdemeanor.

From the earliest of biblical days the evil that was sought to be eliminated was the adulteration or poisoning of one's line of descent. Thus if a married woman were to be secretly impregnated by a third party male, the husband's issue would be severely tainted. The concept of the unknowing husband having to raise and support someone not of his loins was a condition not to be tolerated. Of course, sowing his seed with an unmarried woman was not treated with the same degree of severity; it was then her responsibility.[1] Needless to say, that is no longer the view taken by our society. We are also no longer requiring Hesther Prynne to wear clothing featuring the scarlet letter "A" on her breast so that the world may be warned of her adulterous nature. At least we have progressed far enough so that "adultery" can now be committed by either husband or wife, irrespective of the marital status of his or her new companion. But having eliminated the legal status of the

---

[1] See *State v. Lash,* 16 *N.J.L.* 380 (Sup.Ct.1838) for a philosophical and historical review of the concept of adultery.

paramour from the definition we are left with the question of his or her gender.

Other jurisdictions are split on this issue. In New York an act of homosexual sodomy was held to not constitute an act of adultery entitling a wife to a divorce. *Cohen v. Cohen*, 103 *N.Y.S.*2d 426, 200 Misc. 19 (1951). The Court ruled that "carnal knowledge" is not the same as sexual intercourse and that therefore no action for divorce could exist. New Jersey, as well as other states, have taken the position that homosexuality is an act so offensive to the marital relationship that it entitles the other spouse to a divorce on the basis of extreme cruelty. See *A. v. A.*, 87 *N.J.Super.* 440, 209 *A.*2d 668 (Ch.Div.1965), *H. v. H.*, 59 *N.J.Super.* 227, 157 *A.*2d 721 (App.Div.1959). *See* also *Currie v. Currie*, 120 *Fla.* 28, 162 *So.* 152 (1935), *Crutcher v. Crutcher*, 86 *Miss.* 231, 38 *So.* 337 (1905), *Anonymous*, 2 *Ohio N.P.* 342, 3 *Ohio Dec.* 450 (1895). The basic thrust of these decisions is a recognition that the entrance into this type of a relationship is sufficiently egregious so as to constitute extreme cruelty.

Several jurisdictions have classified heterosexual non-coitus events as adultery. *Rosser v. Rosser*, 355 *So.*2d 717 (Ala.Civ. App.1977) (acts of fellatio); *Doe v. Doe*, 286 *S.C.* 507, 334 *S.E.*2d 829 (App.1985) (acts of fellatio); *Menge v. Menge*, 491 *So.*2d 700 (La.App. 5 Cir.1986) (oral sex).

*Bales v. Hack*, 31 *Ohio App.*3d 111, 31 *OBR* 197, 509 *N.E.*2d 95 (1986) approved the extension of "adultery" to include homosexual activities but gives no reason for that decision. The Georgia Courts also have adopted this view construing that under the Georgia statute a homosexual relationship is equivalent to having sexual intercourse with another person. *Owens v. Owens*, 247 *Ga.* 139, 274 *S.E.*2d 484 (1981).

It is not the intention of this court to judicially add a new cause of action for divorce; a responsibility left specifically to the Legislature. Rather it is the function of the court to define terms, based upon the standards of the times so that law may

truly reflect the mores of our society. Judge Considine's decision in *Melia v. Melia*, 94 *N.J.Super.* 47, 49–50, 226 *A.*2d 745 (Ch.Div.1967) states that:

"Conditions which by modern understanding abort the human and social objects of marriage are essentially incompatible with the public purposes of marriage". *Melia* at 50 [226 *A.*2d 745].

All laws dealing with the termination of a marriage must first be looked at through the eyes of the injured spouse. Other than eighteen month continuous separation (*N.J.S.A.* 2A:34–2d) all grounds for divorce are bottomed in some type of "fault" concept which give the aggrieved spouse the right to seek termination of the marriage. While "fault" may not be a factor relative to other issues incident to divorce such as support or equitable distribution, *Chalmers v. Chalmers*, 65 *N.J.* 186, 320 *A.*2d 478 (1974), it is still the linch-pin in determining whether a marital relationship should be terminated.

An extramarital relationship viewed from this perspective is just as devastating to the spouse irrespective of the specific sexual act performed by the promiscuous spouse or the sex of the new paramour. The homosexual violation of marital vows could be well construed as the ultimate in rejection.

Pursuant to the current Criminal Code, Section 2C:14–1(c) " 'Sexual Penetration' " means vaginal intercourse, cunnilingus, fellatio or anal intercourse between persons or insertion of the hand, finger or object into the anus or vagina either by the actor or upon the actor's instruction. The depth of insertion shall not be relevant as to the question of commission of the crime;"

This definition clearly indicates that the old traditional narrow construction of sexual intercourse is no longer the appropriate definition. Thus on purely technical grounds it could well be argued that acts set forth above should constitute "classical" events of adultery. But marital breakup should not be viewed on purely technical grounds. Rather it should be viewed from the standpoint of the parties. The abandonment

of one's partner and the entry into a homosexual relationship has been described as follows:

"It is difficult to conceive of a more grievous indignity to which a person of normal psychological and sexual constitution could be exposed than the entry by his spouse upon an active and continuous course of homosexual love with another. Added to the insult of sexual disloyalty *per se* (which is present in ordinary adultery) is the natural revulsion arising from knowledge of the fact that the spouse's betrayal takes the form of a perversion." *H. v. H.* 59 *N.J.Super.* 227, 236 [157 *A.*2d 721] (App.Div.1959).

It is not the intent of this court to either condone or condemn homosexuality; that is a social issue best left to a more appropriate forum. What is important is to define, in human terms, those acts which constitute adultery so as to give rise to a termination of the marriage. Accordingly this court finds that adultery exists when one spouse rejects the other by entering into a personal intimate sexual relationship with any other person, irrespective of the specific sexual acts performed, the marital status, or the gender of the third party. It is the rejection of the spouse coupled with out-of-marriage intimacy that constitutes adultery.

Accordingly, the motion to strike the counterclaim is denied.