Lebanon Family Division
No. 2003-050

IN THE MATTER OF DAVID G. BLANCHFLOWER AND SIAN E. BLANCHFLOWER

Argued: July 16, 2003
Opinion Issued: November 7, 2003

*McLane, Graf, Raulerson & Middleton, P.A.,* of Manchester (*Jeanmarie Papelian* and *Margaret R. Crabb* on the brief, and *Ms. Papelian* orally), for the petitioner.

*Witkus and Wilson, P.C.,* of Newport (*Lanea A. Witkus* on the brief and orally), for the respondent.

*Robin Mayer,* by brief and orally, *pro se.*

*Law Office of Marlene A. Lein,* of Manchester (*Marlene A. Lein* on the brief) and *Jennifer L. Levi,* of Boston, Massachusetts, by brief, for Gay & Lesbian Advocates & Defenders, as *amicus curiae.*

NADEAU, J. Robin Mayer, co-respondent in the divorce proceedings of the petitioner, David G. Blanchflower, and the respondent, Sian E. Blanchflower, challenges an order of the Lebanon Family Division (*Cyr,* J.) denying her motion to dismiss the petitioner's amended ground for divorce of adultery. *See* RSA 458:7, II (Supp. 2002). We accepted this matter as an interlocutory appeal under Supreme Court Rule 8, and now reverse and remand.

The record supports the following facts. The petitioner filed for divorce from the respondent on grounds of irreconcilable differences. He

subsequently moved to amend the petition to assert the fault ground of adultery under RSA 458:7, II. Specifically, the petitioner alleged that the respondent has been involved in a "continuing adulterous affair" with the co-respondent, a woman, resulting in the irremediable breakdown of the parties' marriage. The co-respondent sought to dismiss the amended petition, contending that a homosexual relationship between two people, one of whom is married, does not constitute adultery under RSA 458:7, II. The trial court disagreed, and the co-respondent brought this appeal.

Before addressing the merits, we note this appeal is not about the status of homosexual relationships in our society or the formal recognition of homosexual unions. The narrow question before us is whether a homosexual sexual relationship between a married person and another constitutes adultery within the meaning of RSA 458:7, II.

RSA 458:7 provides, in part: "A divorce from the bonds of matrimony shall be decreed in favor of the innocent party for any of the following causes: . . . II. Adultery of either party." The statute does not define adultery. *Id.* Accordingly, we must discern its meaning according to our rules of statutory construction.

"In matters of statutory interpretation, this court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole." *Wegner v. Prudential Prop. & Cas. Ins. Co.*, 148 N.H. 107, 108 (2002) (quotation omitted). We first look to the language of the statute itself and, where terms are not defined therein, "we ascribe to them their plain and ordinary meanings." *Id.*

The plain and ordinary meaning of adultery is "voluntary sexual intercourse between a married man and someone other than his wife or between a married woman and someone other than her husband." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 30 (unabridged ed. 1961). Although the definition does not specifically state that the "someone" with whom one commits adultery must be of the opposite gender, it does require sexual intercourse.

The plain and ordinary meaning of sexual intercourse is "sexual connection esp. between humans: COITUS, COPULATION." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2082. Coitus is defined to require "insertion of the penis in the vagina[]," WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 441, which clearly can only take place between persons of the opposite gender.

We also note that "[a] law means what it meant to its framers and its mere repassage does not alter that meaning." *Appeal of Naswa Motor Inn*, 144 N.H. 89, 91 (1999) (quotation omitted). The statutory compilation in which the provision now codified as RSA 458:7 first appeared is the

Revised Statutes of 1842. *See* ·RS 148:3 (1842). No definition of adultery was contained in that statute. *See id.* Our cases from that approximate time period, however, support the inference that adultery meant intercourse. *See Adams v. Adams*, 20 N.H. 299, 301 (1850); *Burns v. Burns*, 68 N.H. 33, 34 (1894).

Cases from this period also indicate that adultery as a ground for divorce was equated with the crime of adultery and was alleged as such in libels for divorce. *See, e.g., Sheafe v. Sheafe*, 24 N.H. 564, 564 (1852); *White v. White*, 45 N.H. 121, 121 (1863). Although the criminal adultery statute in the 1842 compilation also did not define adultery, *see* RS 219:1 (1842), roughly contemporaneous case law is instructive: "Adultery is committed whenever there is an intercourse from which spurious issue may arise .…" *State v. Wallace*, 9 N.H. 515, 517 (1838); *see also State v. Taylor*, 58 N.H. 331, 331 (1878) (same). As "spurious issue" can only arise from intercourse between a man and a woman, criminal adultery could only be committed with a person of the opposite gender.

██ We note that the current criminal adultery statute still requires sexual intercourse: "A person is guilty of a class B misdemeanor if, being a married person, he engages in sexual intercourse with another not his spouse or, being unmarried, engages in sexual intercourse with another known by him to be married." RSA 645:3 (1996). Based upon the foregoing, we conclude that adultery under RSA 458:7, II does not include homosexual relationships.

We reject the petitioner's argument that an interpretation of adultery that excludes homosexual conduct subjects homosexuals and heterosexuals to unequal treatment, "contrary to New Hampshire's public policy of equality and prohibition of discrimination based on sex and sexual orientation." Homosexuals and heterosexuals engaging in the same acts are treated the same because our interpretation of the term "adultery" excludes all non-coital sex acts, whether between persons of the same or opposite gender. The only distinction is that persons of the same gender cannot, by definition, engage in the one act that constitutes adultery under the statute.

The petitioner also argues that "[p]ublic policy would be well served by applying the same law to a cheating spouse, whether the promiscuous spouse chooses a paramour of the same sex or the opposite sex." This argument is tied to the premise, as argued by the petitioner, that "[t]he purpose underlying [the adultery] fault ground is based upon the fundamental concept of marital loyalty and public policy's disfavor of one spouse's violation of the marriage contract with another."

We have not, however, seen any such purpose expressed by the legislature. As noted above, the concept of adultery was premised upon a specific act. To include in that concept other acts of a sexual nature, whether between heterosexuals or homosexuals, would change beyond recognition this well-established ground for divorce and likely lead to countless new marital cases alleging adultery, for strategic purposes. In any event, "it is not the function of the judiciary to provide for present needs by an extension of past legislation." *Naswa Motor Inn*, 144 N.H. at 92 (quotation and brackets omitted). Similarly, "we will not undertake the extraordinary step of creating legislation where none exists. Rather, matters of public policy are reserved for the legislature." *In the Matter of Plaisted & Plaisted*, 149 N.H. 522, 526 (2003).

The dissent defines adultery not as a specific act of intercourse, but as "extramarital intimate sexual activity with another." This standard would permit a hundred different judges and masters to decide just what individual acts are so sexually intimate as to meet the definition. The dilemma faced by Justice Stewart and his fellow justices applying their personal standards to the issue of pornography in movies demonstrates the value of a clear objective definition of adultery in marital cases. *See Jacobellis v. Ohio*, 378 U.S. 184 (1964).

We are also unpersuaded by the dissent's contention that "[i]t is improbable that the legislature intended to require an innocent spouse in a divorce action to prove the specific intimate sexual acts in which the guilty spouse engaged." Citing *Jeanson v. Jeanson*, 96 N.H. 308, 309 (1950), the dissent notes that adultery usually has no eyewitnesses and therefore "ordinarily must be proved by circumstantial evidence." While this is true, it does not support the dissent's point. For over a hundred and fifty years judges, lawyers and clients have understood that adultery meant intercourse as we have defined it. It is an act determined not by the subjective test of an individual justice but by an objective determination based upon the facts. What must be proved to establish adultery and what evidence may be used to prove it are separate issues. Adultery cases have always required proof of the specific sexual act engaged in, namely, sexual intercourse. That circumstantial evidence may be used to establish the act does not negate or undermine the requirement of proof that the act actually occurred. "*Jeanson* is no authority for the proposition that evidence justifying nothing more than suspicion will suffice to prove the adultery suspected." *Yergeau v. Yergeau*, 132 N.H. 659, 663 (1990).

Finally the petitioner contends that this appeal is procedurally improper because it was based upon the trial court's denial of an interlocutory appeal and lacked the trial court's signature. On January 24, 2003, we

invited the parties to file memoranda addressing whether the trial court's denial of the co-respondent's motion for interlocutory appeal should be reversed and the case accepted for appellate review. The petitioner submitted a memorandum, as did the other parties. After considering the parties' submissions, we issued an order waiving the formal requirements of New Hampshire Supreme Court Rule 8 and treating the co-respondent's motion to dismiss amended petition as an interlocutory appeal pursuant to Rule 8. We have thus already ruled on the issue the petitioner now asserts and we decline to reconsider it.

*Reversed and remanded.*

DALIANIS and DUGGAN, JJ., concurred; BROCK, C.J., and BRODERICK, J., dissented.

BROCK, C.J., and BRODERICK, J., dissenting. We agree with the majority that this appeal is "not about the status of homosexual relationships in our society or the formal recognition of homosexual unions." These issues are not remotely before us. We respectfully dissent because we believe that the majority's narrow construction of the word "adultery" contravenes the legislature's intended purpose in sanctioning fault-based divorce for the protection of the injured spouse. *See Appeal of Mikell*, 145 N.H. 435, 439-40 (2000).

To strictly adhere to the primary definition of adultery in the 1961 edition of WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY and a corollary definition of sexual intercourse, which on its face does not require coitus, is to avert one's eyes from the sexual realities of our world. While we recognize that "we first look to the plain and ordinary meaning of words to interpret our statutes[,] ... it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish." *Appeal of Ashland Elec. Dept.*, 141 N.H. 336, 341 (1996) (citations and quotation omitted).

New Hampshire permits both fault-based and no-fault divorces. No-fault divorces are governed by RSA 458:7-a (Supp. 2002), which permits divorce "irrespective of the fault of either party, on the ground of irreconcilable differences which have caused the irremediable breakdown of the marriage." RSA 458:7 (Supp. 2002) governs fault-based divorce. Unlike no-fault divorces, a fault-based divorce presumes that there is an innocent and a guilty spouse, and permits divorce "in favor of the innocent party" for any of nine possible causes, including impotency, adultery, extreme cruelty, felony conviction for which a party has been imprisoned,

habitual drunkenness, and abandonment. RSA 458:7, I-IV, VII, IX. Under our fault-based law, the innocent spouse is entitled to a divorce because the guilty spouse has breached a marital covenant, such as the covenant to be sexually faithful. *Cf.* 3 C. DOUGLAS, NEW HAMPSHIRE PRACTICE, FAMILY LAW § 2.14, at 46 (3d ed. 2002).

The purpose of permitting fault-based divorces is to provide some measure of relief to an innocent spouse for the offending conduct of a guilty spouse. *See Robinson v. Robinson,* 66 N.H. 600, 610 (1891). The law allows the court to consider fault in assessing the equitable division of the marital assets, *see* RSA 458:16-a, II(l) (1992), and in so doing, as in the case of adultery, seeks to justly resolve the unseemly dissolution of a confidential and trusting relationship. We should therefore view the purpose and fabric of our divorce law in a meaningful context, as the legislature presumably intended, and not so narrow our focus as to undermine its public goals. *See S.B. v. S.J.B.,* 609 A.2d 124, 126 (N.J. Super. Ct. Ch. Div. 1992).

From the perspective of the injured spouse, the very party fault-based divorce law is designed to protect, "[a]n extramarital relationship . . . is just as devastating . . . irrespective of the specific sexual act performed by the promiscuous spouse or the sex of the new paramour." *Id.* Indeed, to some, a homosexual betrayal may be more devastating. Accordingly, consistent with the overall purpose of New Hampshire's fault-based divorce law, we would interpret the word "adultery" in RSA 458:7, II to mean a spouse's extramarital intimate sexual activity with another, regardless of the specific intimate sexual acts performed, the marital status, or the gender of the third party. *See id.* at 127.

The majority intimates that to construe adultery to include homosexual conduct invades the exclusive province of the legislature to establish public policy. We recognize that questions of public policy are reserved for the legislature. *See Minuteman, LLC v. Microsoft Corp.,* 147 N.H. 634, 641-42 (2002). Questions of statutory interpretation are our domain, however. *See Cross v. Brown,* 148 N.H. 485, 486 (2002). We do not intend to add a new cause of action for divorce, which is a purely legislative responsibility. *See S.B.,* 609 A.2d at 126.

Defining the word "adultery" to include intimate extramarital homosexual sexual activity by a spouse is consonant with the decisions of other courts that have considered this issue. *See Patin v. Patin,* 371 So. 2d 682, 683 (Fla. Dist. Ct. App. 1979); *Owens v. Owens,* 274 S.E.2d 484, 485-86 (Ga. 1981); *S.B.,* 609 A.2d at 126-27; *RGM v. DEM,* 410 S.E.2d 564, 566-67 (S.C. 1991). In *Patin,* 371 So. 2d at 683, for instance, the court ruled that there was "no substantial distinction" between homosexual extramarital

sexual activity and heterosexual extramarital sexual activity "because both involve extra-marital sex and therefore marital misconduct." Similarly, in *S.B.*, 609 A.2d at 127, the court concluded that sexual intimacy with another, regardless of whether the intimacy is with a person of one's own or a different gender, constitutes adultery.

The decision in *RGM* is particularly instructive. The law at issue there, like the divorce law at issue in this case, included adultery as a ground for divorce, but did not define it. South Carolina followed "the common-law concept of adultery as illicit intercourse between two persons, at least one of whom is married to someone other than the sexual partner." *RGM*, 410 S.E.2d at 566. This concept is similar to the New Hampshire Criminal Code definition of adultery. The appellant in *RGM* argued that her lesbian conduct was not adulterous because it was homosexual. *See id.* at 566-67. The court rejected this argument "as unduly narrow and overly dependent upon the term sexual intercourse." *Id.* at 567. The court ruled that explicit extramarital sexual activity constituted adultery, regardless of whether it is of a homosexual or heterosexual nature. We find this reasoning persuasive.

The majority suggests that to define "adultery" so as to include intimate extramarital homosexual sexual activity by a spouse is to propose a test so vague as to be unworkable. Apparently, a similar test has been adopted in the three jurisdictions previously cited and remains good law. Further, while such a definition is more inclusive than one reliant solely upon heterosexual sexual intercourse, we do not believe that "intimate extramarital sexual activity" either requires a more explicit description or would be subject to such a widely varying judicial view. As Justice Stewart stated with regard to defining the term "hard-core pornography,"

> I shall not today attempt further to define the kinds of material I understand to be embraced within that shorthand description; and perhaps I could never succeed in intelligibly doing so. But I know it when I see it . . . .

*Jacobellis v. Ohio*, 378 U.S. 184, 197 (1964) (Stewart, J., concurring).

We believe that the majority's interpretation of the word "adultery" is overly narrow in scope. It is improbable that our legislature intended to require an innocent spouse in a divorce action to prove the specific intimate sexual acts in which the guilty spouse engaged. There are usually no eyewitnesses to adultery. *See Jeanson v. Jeanson*, 96 N.H. 308, 309

(1950). It ordinarily must be proved by circumstantial evidence. *See id.* Nor does it seem reasonable that the legislature intended to allow a guilty spouse to defend against an adultery charge by arguing that, while he or she engaged in intimate sexual activity with another, the relationship was not adulterous because it did not involve coitus. It is hard to comprehend how the legislature could have intended to exonerate a sexually unfaithful or even promiscuous spouse who engaged in all manner of sexual intimacy, with members of the opposite sex, except sexual intercourse, from a charge of adultery. Sexual infidelity should not be so narrowly proscribed.

It is much more likely that our legislature intended the innocent spouse to establish adultery through circumstantial evidence showing, by a preponderance of the evidence, that the guilty spouse had engaged in intimate sexual activity outside of the marriage, regardless of the specific sexual acts involved or the gender of the guilty spouse's lover. Under our fault-based divorce law, a relationship is adulterous because it occurs outside of marriage and involves intimate sexual activity, not because it involves only one particular sexual act. Accordingly, we respectfully dissent.