NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

9th Circuit Court-Manchester Family Division
No. 2020-0211

IN THE MATTER OF MOLLY BLAISDELL AND ROBERT BLAISDELL

Submitted: January 14, 2021
Opinion Issued: April 1, 2021

Law Office of Joshua L. Gordon, of Concord, for the petitioner, filed no brief.

Lothstein Guerriero, PLLC, of Concord (Theodore M. Lothstein on the brief), for the respondent.

DONOVAN, J. In this interlocutory appeal, the respondent, Robert Blaisdell, challenges a decision of the Circuit Court (McIntyre, J.) granting a motion to dismiss his cross-petition for divorce on fault grounds of adultery alleging sexual intercourse between the petitioner, Molly Blaisdell, and another woman based upon In the Matter of Blanchflower & Blanchflower, 150 N.H. 226, 227-28 (2003), which limited the definition of adultery under RSA 458:7, II (2018) to sexual intercourse between persons of the opposite sex. Today, we overrule Blanchflower and reinterpret the term "adultery," as it is used in RSA 458:7, II, to include sexual intercourse between a married person and someone other than that person's spouse, regardless of either person's sex or gender. Accordingly, we reverse the decision of the circuit court and remand for further proceedings.

## I. Factual and Procedural History

The following pertinent facts are supported by the record or undisputed on appeal. In January 2019, the petitioner filed for divorce from the respondent on grounds of irreconcilable differences. In March 2019, the respondent filed an answer and a cross-petition for divorce on fault-based grounds of adultery, alleging an ongoing intimate relationship between the petitioner and another woman. In October 2019, the petitioner filed a motion to dismiss the fault-based claims of adultery, arguing that "New Hampshire [law] clearly states that adultery under RSA 458:7, II does not include homosexual relationships," see Blanchflower, 150 N.H. at 227-28, and, therefore, the respondent's "allegation of fault grounds based on a supposed homosexual relationship is contrary [to] the law and must be dismissed." In November 2019, the circuit court granted the motion to dismiss the respondent's cross-claim in a one-sentence margin order stating: "Based on the holding in [Blanchflower]." This Rule 8 interlocutory appeal followed. See Sup. Ct. R. 8.

## II. Blanchflower and Subsequent Developments in the Law

The narrow question before the court in Blanchflower was "whether a homosexual [intimate] relationship between a married person and another constitutes adultery within the meaning of RSA 458:7, II." Blanchflower, 150 N.H. at 227. In answering that question, we defined "adultery" as "voluntary sexual intercourse between a married man and someone other than his wife or between a married woman and someone other than her husband." Id. (quoting Webster's Third New International Dictionary 30 (unabridged ed. 1961)). Further, we defined "sexual intercourse" as a "sexual connection esp. between humans: COITUS, COPULATION," and defined "coitus" as requiring "insertion of the penis in the vagina." Id. (quoting Webster's Third New International Dictionary 441, 2082 (unabridged ed. 1961)). We observed that case law addressing adultery "support[s] the inference that adultery meant intercourse." Id. at 228. We also explained that adultery as a ground for divorce was historically equated with the crime of adultery, which was defined as "intercourse from which spurious issue may arise." Id. (quotation omitted). Based upon the foregoing, we concluded that "adultery under RSA 458:7, II does not include homosexual relationships." Id.

In 2009, six years after Blanchflower was decided, the New Hampshire legislature enacted a statute that redefined marriage as "the legally recognized union of [two] people" and declared that "[a]ny person who otherwise meets the eligibility requirements of this chapter may marry any other eligible person regardless of gender." RSA 457:1-a (2018). Additionally, the legislature

adopted provisions converting existing civil unions into marriages by operation of law, RSA 457:46, II (2018), and recognizing same-sex marriages and civil unions from other jurisdictions as legal marriages, RSA 457:3, :45 (2018).  In 2015, after same-sex marriage was adopted by statute in New Hampshire, the Supreme Court of the United States held that state laws denying marriage to same-sex couples violate the Federal Constitution.  See Obergefell v. Hodges, 135 S. Ct. 2584, 2607-08 (2015).

### III.  Stare Decisis Analysis

On appeal, the respondent invites us to overrule Blanchflower to the extent that it limits the definition of adultery to extramarital, sexual intercourse between persons of the opposite sex.  The respondent contends that, given the statutory right of same-sex couples to marry, RSA 457:1-a, the court's construction of RSA 458:7, II in Blanchflower is now discordant with the overall legislative scheme governing marriage in New Hampshire because it prohibits an adultery claim under RSA 458:7, II with respect to unfaithful spouses in same-sex marriages.  The respondent further asserts that a stare decisis analysis weighs in favor of overruling Blanchflower, and that a proper interpretation of RSA 458:7, II requires as much.  We accept the respondent's invitation to revisit our holding in Blanchflower.

Stare decisis, the idea that today's court should stand by yesterday's decisions, commands great respect in a society governed by the rule of law, and we do not lightly overrule a prior opinion.  Seacoast Newspapers v. City of Portsmouth, 173 N.H. 325, 333 (2020).  "Thus, when asked to reconsider a holding, the question is not whether we would decide the issue differently de novo, but whether the ruling has come to be seen so clearly as error that its enforcement was for that very reason doomed."  Id. (quotation omitted).

We will overrule a decision only after considering: (1) whether the rule has proven to be intolerable simply by defying practical workability; (2) whether the rule is subject to a kind of reliance that would lend a special hardship to the consequence of overruling; (3) whether related principles of law have so far developed as to have left the old rule no more than a remnant of abandoned doctrine; and (4) whether facts have so changed, or come to be seen so differently, as to have robbed the old rule of significant application or justification.  Id.  Although these factors guide our judgment, no single factor is dispositive.  Id.

First, with respect to the initial stare decisis factor, Blanchflower may have provided a workable rule, but it is no longer practical given that it defies any application to an entire class of legally married persons.  Limiting adultery to heterosexual relationships also undermines the legislative intent underlying same-sex marriage laws.  Accordingly, we conclude that the first factor weighs in favor of overruling Blanchflower.

3

Second, we consider whether <u>Blanchflower</u>'s interpretation of the adultery statute is subject to a kind of reliance that would lend a special hardship to the consequence of overruling it. <u>See id</u>. Reliance interests are most often implicated when a rule is operative in the commercial law context where advance planning of great precision is most obviously a necessity. <u>Id</u>. We agree with the respondent that no such reliance interests are implicated by <u>Blanchflower</u>'s interpretation of RSA 458:7, II.[1] As the respondent observes, individuals rely on their sexual preferences and romantic sensibilities when deciding with whom to be intimate, not judicial decisions.

Third, we consider whether related principles of law have developed such that the old rule is no more than a remnant of an abandoned doctrine. <u>Id</u>. This factor concerns whether the law has developed in such a manner as to undercut the prior rule. <u>State v. Balch</u>, 167 N.H. 329, 335 (2015). Such development could arise upon the promulgation of new laws or rules that render past decisions obsolete or upon the formulation of laws across multiple jurisdictions in a manner that is discordant with the prior rule. <u>Id</u>. As we have already explained, New Hampshire adopted same-sex marriage by statute in 2009, <u>see</u> RSA 457:1-a, and, as the Supreme Court determined in <u>Obergefell</u>, the Federal Constitution forbids any jurisdiction in the United States from maintaining laws prohibiting same-sex marriage.[2] <u>Obergefell</u>, 135 S. Ct. at 2607-08. After many years of same-sex couples seeking "equal dignity in the eyes of the law" by way of legally recognized marriages, the Supreme Court determined that "[t]he Constitution grants them that right." <u>Id</u>. at 2608. It defies logic to suggest that our legislature and the Supreme Court recognized the rights of same-sex couples to enter into legally valid marriages without also intending that same-sex couples be endowed with all of the responsibilities, protections, and grounds for divorce that are associated with the legal status of

---

[1] Even if a person were to have engaged in an extramarital affair with a person of the same sex in reliance on <u>Blanchflower</u> to insulate them from a fault-based divorce action, reliance on judicial precedent to protect marital infidelity is not the type of reasonable reliance that the second factor of the stare decisis analysis seeks to protect. <u>See State v. Duran</u>, 158 N.H. 146, 157 (2008) ("Under the second . . . factor, we inquire into 'the cost of a rule's repudiation as it would fall on those who have relied <u>reasonably</u> on the rule's continued application.'" (emphasis added)) (quoting <u>Planned Parenthood of Southeastern Pa. v. Casey</u>, 505 U.S. 833, 855 (1992)).

[2] Notwithstanding these developments, the full extent of the rights and protections intended to flow from them have been limited by statutes that are no longer consonant with the current definition of marriage. <u>See, e.g.</u>, RSA 460:2-a (2018) ("A <u>man and woman</u> in contemplation of marriage may enter into a written interspousal contract . . . ." (emphasis added)); RSA 458:7, VIII (2018) (providing a fault ground for divorce "[w]hen either party has joined any religious sect or society which professes to believe the relation of <u>husband and wife</u> unlawful, and has refused to cohabit with the other for 6 months together" (emphasis added)). The legislature may wish to review these statutes to address these anomalies.

4

marriage. Blanchflower's rule limiting the statutory definition of adultery to sexual intercourse between persons of the opposite sex removes the legal protection of the marital promise of fidelity from same-sex marriages, and is clearly a remnant of the abandoned doctrine denying same-sex couples the right to enter into legally valid marriages.

Fourth, we ask whether facts have so changed, or come to be seen so differently, as to have robbed the old rule of significant application or justification. Seacoast Newspapers, 173 N.H. at 334. The institution of marriage "has not stood in isolation from developments in law and society," and "[t]he history of marriage is one of both continuity and change." Obergefell, 135 S. Ct. at 2595. When Blanchflower was decided, the law and public opinion surrounding the rights of same-sex couples to engage in intimate association and marriage had already begun to transform. See Lawrence v. Texas, 539 U.S. 558, 578 (2003) (holding that the Due Process Clause of the Federal Constitution protects the right of same-sex couples to enjoy intimate association); Goodridge v. Department of Public Health, 798 N.E.2d 941, 969 (Mass. 2003) (holding that "barring an individual from the protections, benefits, and obligations of civil marriage solely because that person would marry a person of the same sex violates the Massachusetts Constitution"). Indeed, the dissent in Blanchflower argued that to "strictly adhere to the primary definition of adultery in the 1961 edition of [the dictionary] . . . is to avert one's eyes from the sexual realities of our world." Blanchflower, 150 N.H. at 230 (Brock, C.J., dissenting). Significant change continued in the years that followed Blanchflower, including the legal recognition of same-sex marriage in New Hampshire, and shortly thereafter, across the United States. See RSA 457:1-a; Obergefell, 135 S. Ct. at 2607-08. These developments have left the rule derived from Blanchflower without justification, rendering any application of the rule inconsistent with the current state of the law.

In sum, the view of the institution of marriage underpinning our holding in Blanchflower has changed in the eyes of the law and society. Thus, at the conclusion of our stare decisis analysis, three factors weigh in favor of overruling, and the second factor — dealing with reliance interests — is not implicated in this case. Accordingly, we overrule Blanchflower to the extent that it limits the definition of "adultery," as that term is used in RSA 458:7, II, to sexual intercourse between persons of the opposite sex.

IV. Reinterpretation of RSA 458:7, II

Having overruled Blanchflower, we next take the opportunity to reinterpret the term "adultery," as it is used in RSA 458:7, II, because the issue is likely to arise on remand. In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole. Petition of Carrier, 165 N.H. 719, 721 (2013).

We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. Id. We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. Id. We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result. Id. Moreover, we do not consider words and phrases in isolation, but rather within the context of the statute as a whole. Id. This consideration of the statute, as a whole, enables us to better discern the legislature's intent and to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme. Id.

RSA 458:7 provides, in part: "A divorce from the bonds of matrimony shall be decreed in favor of the innocent party for any of the following causes: . . . II. Adultery of either party." "Adultery" is defined as "voluntary sexual intercourse between a married man and someone other than his wife or between a married woman and someone other than her husband." Webster's Third New International Dictionary 30 (unabridged ed. 2002). "Sexual intercourse" is defined as either "heterosexual intercourse involving penetration of the vagina by the penis: COITUS" or "intercourse involving genital contact between individuals other than penetration of the vagina by the penis." Id. at 2082.

The respondent observes that this court does "not construe statutes in isolation; instead, we attempt to do so in harmony with the overall statutory scheme," Estate of Gordon-Couture v. Brown, 152 N.H. 265, 272 (2005). He also argues that defining the term "adultery" to include sexual intercourse between persons of the same sex would harmonize RSA 458:7, II and RSA 457:1-a, both of which are part of the legislative scheme governing marriage. To do the opposite, the respondent contends, would be to interpret those two statutes in contradiction with each other in contravention of our rules of statutory interpretation because "[w]e generally assume that when the legislature enacts a provision, it has in mind previously enacted statutes relating to the same subject matter." Prof. Fire Fighters of Wolfeboro v. Town of Wolfeboro, 164 N.H. 18, 22 (2012). We agree with the respondent.

Limiting the definition of adultery to sexual intercourse between two persons of the opposite sex would be inconsistent with the legislature's enactment of same-sex marriage over a decade ago, resulting in RSA 457:1-a permitting two people to marry regardless of either person's sex and in RSA 458:7, II incongruously providing that infidelity may be a ground for divorce only if it is committed between people of the opposite sex. Such an interpretation would not effectuate the statute's overall purpose of protecting the marital promise of fidelity in all legally recognized marriages and would lead to an absurd and unjust result. Although the dictionary retains the

6

definition of "sexual intercourse" that we used to reach our decision in Blanchflower, it now includes a definition that is applicable regardless of the sex or gender of the persons engaged in the described conduct. See Webster's Third New International Dictionary 2082 (unabridged ed. 2002) (defining sexual intercourse as "intercourse involving genital contact between individuals other than penetration of the vagina by the penis"). This broader definition is better suited to today's marital legal landscape. See RSA 457:1-a; Obergefell, 135 S. Ct. at 2607-08.

Moreover, interpreting RSA 458:7, II to provide that spousal infidelity may be a ground for divorce only in marriages between persons of the opposite sex is constitutionally suspect in light of the Supreme Court's holding in Obergefell, and "'where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to [legislative] intent.'" Polonsky v. Town of Bedford, 171 N.H. 89, 96 (2018) (emphasis and brackets omitted) (quoting DeBartolo Corp. v. Fla. Gulf Coast Trade Council, 485 U.S. 568, 575 (1988)). Accordingly, for purposes of RSA 458:7, II, the term "adultery" is defined as voluntary sexual intercourse between a married person and someone other than that person's spouse, regardless of the sex or gender of either person. For purposes of this definition, "sexual intercourse" shall include heterosexual intercourse involving penetration of the vagina by the penis, and intercourse involving genital contact other than penetration of the vagina by the penis.[3]

## V.  Retroactive Application

Finally, the respondent requests that we clarify the applicability of our ruling to this case on remand. In her motion for summary disposition of this appeal, the petitioner requested that this case be remanded with "instructions that any change in the law does not apply retroactively." "At common law, appellate decisions were presumptively retroactive because, by stating what the law is, the court merely stated what the law always was." Lee James Enterprises, Inc. v. Town of Northumberland, 149 N.H. 728, 729-30 (2003). "We have recognized, however, that retroactive application of judicial decisions at times can cause harsh results, when, consistent with the doctrine of stare decisis, parties have relied upon a prior rule of law." Id. at 730. Therefore, we may apply a decision prospectively when "justice would be better served by doing so." Id.

---

[3] We observe that, in a very different context, the legislature has more broadly and precisely defined "sexual contact" and "sexual penetration" in the Criminal Code. See RSA 632-A:1, IV; V (Supp. 2020). Whether these definitions should apply to adultery claims in the context of marital law involves policy considerations best suited for the legislature.

In this case, as explained above, we have considered whether Blanchflower's interpretation of the adultery statute is subject to a kind of reliance that would lend a special hardship to the consequence of overruling it, and concluded that it is not. Consistent with that determination, we further conclude that justice would not be better served by applying our decision only prospectively. Accordingly, our decision today shall apply retroactively. See id.

Reversed and remanded.

HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred.