## STATE *versus* FRANKLIN T. WEATHERBY.

Adultery can only be committed by parties one of whom at least, is married, and by parties not married to each other.

A decree of divorce from the bond of matrimony effectually and fully abrogates the marriage contract, and sets the parties free from their marital relations to each other.

Where the wife was divorced for the fault of the husband, and he married another, and cohabited with her without having obtained a like divorce, he does not thereby commit the crime of adultery either by the laws of this state or at common law.

The indictment charges that the defendant, on the 22d of August, 1856, at Mexico, in said county of Oxford, did commit the crime of adultery with one Catharine F. Thompson, by then and there having carnal knowledge of her body, he, the said Weatherby, being then and there a married m and then and there having a lawful wife alive, other than the said Catharine F. Thompson, and he the said Weatherby, and the said Catharine F. Thompson, not being then and there

lawfully married to each other. The indictment was found at this term of the court.

It was proved on the part of the government and admitted by the defendant that he was lawfully married to one Elizabeth Whitney, at Bath, in this state, June 15, 1837. That they lived together about nine years, and then separated. That about five years ago she was divorced from said Weatherby, on her application, by the Supreme Judicial Court of this state, and has since married again.

It was also proved on the part of the government, that the defendant and one Catharine F. Thompson, the person with whom the adultery is alleged to have been committed, were married to each other at Nashua, New Hampshire, May 14, 1854, and in June following moved into the town of Mexico, in this county, where they have since lived and cohabited together as husband and wife.

Upon this evidence it was contended for defendant that the jury would not be authorized to find the defendant guilty of adultery, and the court was requested so to instruct them. The presiding judge, intending to reserve the question for the consideration of the full court, overruled the objections, and instructed the jury that if they should find that the defendant had had sexual intercourse with said Catharine F. Thompson as alleged in the indictment, to find a general verdict of guilty, and the jury so found.

*Record & Walton,* counsel for defendant, argued as follows:

In the investigation of this cause four titles come under consideration: Divorce, Marriage, Bigamy, and Adultery.

1. Of the Divorce. Encyclopedia Americana, title Divorce; Bouvier's Law Dict., title Divorce; Webster's Dict., title Divorce; Holthouse's Law Dict., Divorce; 2 Kent's Com., Lect. 27; Story's conflict of Laws, chap. 7.

2. Of the capacity of the guilty party to marry again. Medway v. Needham, 16 Mass., 157; Cambridge v. Lexing-

ton, 1 Pick., 506 ; Putnam v. Putnam, 8 Pick., 433 ; Story's conflict of Laws, 2d Ed., chap. 5, sec. 123, 124.

3. Of Bigamy and Polygamy. Russell on Crimes, title Bigamy, chap. 23, p. 187 ; Mass. Stat. of 1784, chap. 40, sec. 2; Stat. of 1821, chap. 10, sec. 2 ; R. S., chap. 160, sec. 5, 6 ; chap. 87, sec. 4 ; chap. 89, sec. 1 ; Stat. of 1834, chap. 116, sec. 2, 3 ; R. S., chap. 89, sec. 2, 7th c.

4. Of Adultery. Commonwealth v. Putnam, 1 Pick., 136 ; 2 Greenl. on Ev., sec. 48.

The application of these authorities to the case at bar will establish the following propositions :

1. That the divorce from his first wife, although obtained upon her application, dissolved and totally severed the marriage tie, and gave the defendant the capacity to marry again, unless restrained by the laws of the place where the second marriage should take place.

2. That his second marriage having been solemnized in New Hampshire where no such restraints exist, was valid, and should be so regarded everywhere.

3. That by living and cohabiting with his second wife in this state, the defendant did not commit adultery, or any other crime ; but on the contrary, Catharine F. Thompson, the woman with whom he is alleged to have committed the crime of adultery, was at the time his lawful wife.

*S. C. Andrews*, attorney for the state.

RICE, J. The defendant was indicted for adultery. On the trial it was proved and admitted that in 1837 the defendant was lawfully married to Elizabeth Whitney, in the town of Bath, in this state, and that they lived together as husband and wife about nine years ; that some five years since she was divorced from the defendant by the Supreme Judicial Court of this state, on her own application, and that she has since that time been again married to a person other than the defendant, with whom she is now living ; that the defendant and Catharine F. Thompson, the person with whom the

State *v.* Weatherby.

alleged crime was committed, were married in Nashua, New Hampshire, May 14, 1854, and in the following June moved into Mexico, in the county of Oxford, where they have since cohabited together as husband and wife.

The question now presented for our determination is, do these uncontroverted facts render the defendant amenable to the charge of adultery?

The civil law defines adultery to be the " carnal knowledge of another man's wife," and as is said in Wood's Institutes, 272, the connection of a married man with a single woman does not make him guilty of the crime of adultery.

Adultery is the carnal connection of a man with another's wife. The man may be either married or single; *but the woman must be married;* for the essence of the crime is in the adulteration of the offspring, the spuriousness of the issue. If a married man has carnal knowledge of a single woman, it is not adultery, but fornication. 2 Swift's Laws of Conn., 227. Noah Webster defines it to be the violation of the marriage bed; a crime or a civil injury which introduces or may introduce into a family a spurious offspring. Such would seem to have been the more ancient and common meaning attached to the term adultery. With us, however, the term has a more comprehensive signification, and renders both parties implicated equally liable to punishmen if either the man or woman be married. R. S., chap. 160, sec. 1.

In this state, marriage is purely a civil contract. When contracted in violation of positive prohibitions of law, as in case of the marriage of an idiot, an insane person, or of a white person and a negro, indian or mulatto, it is absolutely void; and the contract may be dissolved in other cases, at the discretion of the Supreme Judicial Court. This discretion is, however, usually exercised within the rules and for the causes heretofore prescribed by the legislature. When the power of the court has been exercised, and a divorce from the bond of matrimony has been decreed on the application of one party, for the misconduct of the other, in what

State *v.* Weatherby.

condition are the parties left? That the innocent party is absolutely absolved from all obligations created by the prior marriage contract, and is at liberty to marry again, has never been controverted. But the condition of the guilty cause of the divorce is not, in popular estimation, at least, so free from doubt. There seems also to have been an impression in the minds of the legislature that such party was not, by such decree, relieved from all obligations imposed by the former marriage. Hence it was provided in sec. 2, chap. 89, R. S., clause *seventh,* "In all cases where one party has been or shall be, divorced from the bond of matrimony, the court granting the same may, on application of the other party, grant a like divorce on such terms and conditions as such court, in the exercise of a sound discretion, may judge reasonable."

The origin of this opinion may probably be found in chap. 40, sec. 2, of the laws of 1784, providing for the punishment of adultery and polygamy. That section contains the following proviso: "That this act, or anything therein contained, shall not extend to any person that is or shall be at the time of such marriage, divorced by sentence of any court whatever, which has or may have legal jurisdiction for that purpose, unless such person is the guilty cause of such divorce."

The above provision was in substance re-enacted by the legislature of this state, chap. 10, sec. 2, laws of 1821. These acts do, by implication, restrain the party who has been the guilty cause of divorce from contracting another marriage, and in case of violation of such restraint impose the penalty prescribed for *polygamy.* There is nothing in either of these acts, affirming the continuation of the marriage contract as to either party, nor declaring that the " guilty cause of divorce" shall be deemed guilty of adultery in case of a second marriage. For reasons of public policy, it may be supposed the legislature deemed it expedient to restrain such guilty party from contracting a second marriage, by rendering them liable to punishment, as for the

crime of polygamy. This, however, is by inference only. How far it was ever binding as a formal statute we do not now inquire.

The statute of 1821 was modified by act of 1834, chap. 116, sec. 32, and by the provisions of the revised statute so as to authorize the court to grant the guilty cause of divorce a *like divorce.*

Adultery, in this state, can only be committed by parties, one of whom, at least, is married, and by parties who are not married to each other. To affirm that a person is married, and yet has no legal husband or wife, is manifestly a solecism. In the very nature of things, the marriage contract under such circumstances cannot exist. There cannot be a husband without a wife, nor a wife without a husband. The existence of one necessarily and conclusively implies the existence of the other. Husband and wife are correlative terms. Anything, therefore, which destroys that relation as to one party necessarily destroys it as to the other.

A decree of divorce from the bond of matrimony effectually and fully abrogates the marriage contract, and sets the parties free from their marital relations to each other. The People v. Hovey, 5 Barb. Sup. Court R., 117; Com. v. Putnam, 1 Pick., 136; West Cambridge v. Lexington, 1 Pick., 506.

By operation of the decree of the court, granting a divorce from the bonds of matrimony to the former wife of the defendant, he ceased to be a married man. Whether he could, therefore, legally contract a new marriage would depend upon the laws of the place where such marriage was contracted. West Cambridge v. Lexington, 1 Pick., 506. The last marriage of the defendant was contracted in New Hampshire. We are not aware of the existence of any law in that state which would restrain a party situated as the defendant was at the time of his alleged marriage with Catharine F. Thompson from entering into the marriage contract. See compiled laws of N. H., chap. 233, sec. 5 and 6.

But, however this may be, this case cannot be affected by

it. ' Nor can this case be affected by the existence or non-existence of a law in this state which shall make a person who has been divorced, and was the guilty cause of such divorce, who shall marry again, amenable to the punishment provided for polygamy. He is not indicted for the violation of such a statute, if any such exist. There is no law in this state which declares that such acts as have been proved against the defendant constitute the crime of *adultery*. Nor would those acts constitute that crime at the common law. This indictment cannot be sustained.

*Exceptions sustained and a new trial granted.*