STATE v. BERT BIGELOW.

January Term, 1915.

Present: POWERS, C. J., WATSON, TAYLOR, SLACK, and HEALY, JJ.

Opinion filed January 23, 1915.

*Adultery—Persons Punishable Under P. S. 5881.*

Under P. S. 5881, prescribing a punishment for a person who commits adultery, without defining that offence, construed with reference to the common law-offence, and with reference to P. S. 5882; providing that a married man and an unmarried woman who commit an act that would be adultery if the woman were married, shall each be guilty of adultery, a single man who has unlawful intercourse with a married woman is guilty of adultery.

INFORMATION charging adultery, Caledonia County, December Term, 1913, *Fish*, J., presiding. The respondent pleaded guilty, and thereupon and before judgment moved in arrest of judgment for the reasons stated in the opinion. Motion overruled, to which the respondent excepted.

*Joseph Fairbanks* for the respondent.

*N. A. Norton*, State's Attorney, for the State.

TAYLOR, J. This is an information for adultery. The respondent pleaded guilty and thereupon moved in arrest of judgment on the ground that no offence is charged in the information. The motion was overruled, to which the respondent excepted. There was judgment and sentence, the execution of which was stayed, and the cause passed to this Court.

The information charges, with proper allegations of time and place, that the respondent, a single man, carnally knew one ————————, a married woman, then and there having a lawful husband living, naming him, and not then and there being the wife of the respondent; and that he did then and there commit the crime of adultery with the said ————————
The contention of the respondent is that a single man who has

illicit sexual intercourse with a married woman is not guilty of adultery in the absence of a statute to that effect. This claim finds support among some text writers and in the decisions of a few states cited in respondent's brief. See Bish. on Stat. Crimes, §§655-7; 2 Greenleaf on Ev. §48; *Republica* v. *Roberts,* 1 Yeates (Pa.) 6; *Com.* v. *Lafferty,* 6 Gratt. 672; *Hunter* v. *U. S.,* 1 Pinney (Wis. ) 91.

While reference to the question has been made in our decisions, it appears never before to have been squarely raised in this State. The question turns upon the definition of the term "adultery" as used in P. S. 5881, upon which this prosecution is based. This statute does not define the offence but punishes what was known as adultery under the common law, referring to it by name; so we must look to that source for its definition. *State* v. *Clark,* 83 Vt. 305, 308. Adultery was a private wrong at the common law as it existed at the time of its adoption by our Legislature, but was an offence against the ecclesiastical law. As known to the common law as distinguished from ecclesiastical law, adultery consisted of sexual intercourse by a man, married or single, with a married woman, not his wife. The circumstance on which adultery depended at common law was the possibility of introducing spurious issue; in other words, its tendency to adulterate the issue of an innocent husband and turn the inheritance away from his own blood to that of a stranger. 1 R. C. L. 633 and cases cited. At the same time the ecclesiastical law dealt with unlawful sexual commerce as a breach of the marriage vow and punished only the married party for adultery while as to the unmarried person the offence was fornication. *Bashford* v. *Wells,* 78 Kan. 295, 16 Ann. Cas. 310 and note. The latter view of adultery is embodied in P. S. 5882, which declares that a married man and an unmarried woman who commit an act which would be adultery if such woman were married, shall each be guilty of adultery. *State* v. *Clark, supra.* The adoption in 1818 of what is now P. S. 5882 as an amendment of the statute of 1797, which made adultery an indictable offence, clearly indicates that the common law and not the ecclesiastical meaning of the term was employed in the original statute, for otherwise the amendment would have been unnecessary.

Consideration of the opposing theories of adultery at common law and in the ecclesiastical courts makes it apparent that in the former there was no reason for distinguishing between a

married and a single man, the particeps being a married woman; while in the latter the guilt inhered in the breach of the marriage vow and so the offence could not be committed by an unmarried person, man or woman. Respondent's counsel argues that the amendment of 1818 shows that, but for that statute (now P. S. 5882), an unmarried particeps would not be guilty of adultery in this State. The argument loses sight of the common law theory of adultery. The amendment recognized the true theory and extended our statute so as to include what would be adultery by ecclesiastical law, but in no way restricted the common law definition of the term.

It remains to consider whether under the common law definition of adultery our statute makes both parties to the act guilty of the offence, or whether the fact of marriage on the part of the man is material. On this question the common law furnishes no direct authority; for, as we have seen, adultery was not an indictable offence at common law. That the wrong involved the man as well as the unfaithful wife is perfectly apparent. If we recur to the source from which the common law idea of adultery sprung we shall see that it regarded the man and woman alike. It found its root in the Mosaic law which provided: ''If a man be found lying with a woman married to a husband, then they shall both of them die, the man that lay with the woman and the woman.'' Deut. XXII, 22; Lev. XX, 10. The common law idea of adultery prevailed in the Mosaic law, for by the latter the man was condemned, not because he had violated his matrimonial vow, but ''because he hath humbled his neighbor's wife.'' Deut. XXII, 24.

Turning to the decisions of our sister states that have made adultery an indictable offence without defining the term, we discover a well-defined line of cleavage between them. In the jurisdictions holding that a single man is not guilty of adultery for sexual intercourse with a married woman there is either, as was held in *Republica* v. *Roberts, supra,* a compelling uniform practice, or some peculiar language of the statute, or, what is more often the case, they adopt the ecclesiastical and not the common law definition of adultery. In those jurisdictions which adhere to the common law definition it is held that a single man is guilty of adultery even in the absence of any express declaration in the statute. *State* v. *Wallace,* 9 N. H. 515; *Smitherman* v. *State,* 27 Ala. 23; *State* v. *Pearce,* 2 Blackf. (Ind.) 318; *State* v. *Conoway,*

Tappan (Ohio) 58; note 16 Ann. Cas. 314; see *Hood* v. *State,* 56 Ind. 263, 26 Am. Rep. 21; *State* v. *Weatherby,* 43 Me. 258, 69 Am. Dec. 59; *Com.* v. *Call,* 21 Pick. 509, 32 Am. Dec. 284; *State* v. *Lash,* 16 N. J. L. 380, 32 Am. Dec. 397; 1 R. C. L. 631.

Having adopted the common law definition of adultery, we regard it as the settled law of this State that any man, married or single, having voluntary sexual intercourse with a married woman, not his wife, is guilty of adultery under P. S. 5881. *State* v. *Searles,* 56 Vt. 516; *State* v. *Bisbee,* 75 Vt. 293. The fact that the question has never before reached this Court is a strong indication that the profession has not seriously doubted the view we now adopt. A uniform practice of more than a century, while it does not make the law, as said in *Republica* v. *Roberts,* is strong evidence of what the law is. In the statute as amended in 1818 reference is made to the parties in a way to indicate an intention to punish the male particeps equally with the woman; besides, although ever since 1797 a single man has been deemed guilty under the so called "blanket act" and since 1818 a single woman having sexual intercourse with a married man has been deemed guilty of adultery, a single man having sexual intercourse with a married woman has been outside the pale of the law, unless the Legislature intended that both parties to the act should be equally guilty of adultery. Taken together these facts make it doubly certain that under the statute in question marriage on the part of the man is wholly immaterial. Our conclusion is that the county court did not err in overruling the respondent's motion in arrest of judgment.

*Judgment that there is no error in the proceedings and that the respondent take nothing by his exception. Let execution be done.*