Gen. 105]	105

## FAMILY LAW

### DIVORCE – WHETHER SAME-SEX MARITAL INFIDELITY CAN QUALIFY AS ADULTERY FOR PURPOSES OF FAMILY LAW PROVISIONS GOVERNING DIVORCE

July 24, 2015

*The Honorable Luke Clippinger*
*The House of Delegates of Maryland*

You have asked whether the term "adultery" under Maryland law includes a spouse's extramarital sexual infidelity with a person of the same sex. Although the concept of adultery has significance in both criminal law and family law, the State's criminal prohibition against adultery has fallen into disuse, so we will focus on the definition of adultery for purposes of Maryland family law. In our opinion, adultery, as that term is used in the Family Law Article, includes a spouse's extramarital sexual conduct with someone of the same sex.

We base this conclusion in large part on the purpose behind adultery laws in the domestic relations context. The primary purpose of adultery as a concept in Maryland family law is to recognize that sexual infidelity is a breach of the marriage vow and causes damage to the marriage, such that the injured party should be allowed to dissolve the marriage more easily than would otherwise be the case. This purpose is implicated to the same degree whether an unfaithful spouse has sex with a man or a woman; extramarital sexual activity with someone of the same sex is just as damaging to a marriage as sexual activity with someone of the opposite sex. We accordingly believe that Maryland courts would recognize same-sex sexual infidelity as adultery.

### I

### Background

#### A.	*Adultery as a Legal Concept Under Maryland Law*

Most people are familiar with adultery as a moral concept, but it is also relevant as a legal concept under Maryland law. It is one of only a few so-called "fault" grounds on which spouses may obtain an absolute divorce without first living "separate and apart" for an entire year. Md. Code Ann., Family Law ("FL") § 7-103(a) (2012 Repl. Vol., 2014 Supp.). It is also a factor in alimony and

child custody determinations. *See* FL § 11-106(b)(6) (providing that "the circumstances that contributed to the estrangement of the parties" is relevant in determining alimony); *Robinson v. Robinson*, 328 Md. 507, 516 (1992) (child custody); *Welsh v. Welsh*, 135 Md. App. 29, 38 (2000) (alimony).

The concept of adultery also appears in Maryland's criminal law, but it has grown less relevant in recent years. Although adultery is still a misdemeanor, the criminal prohibition on adultery, as far as we can tell, has not been enforced in a long time. *See* Md. Code Ann., Crim. Law ("CR") § 10-501 (2012 Repl. Vol., 2014 Supp.) (providing that "[a] person may not commit adultery" and that anyone who violates the section "shall be fined $10"); *see also Cole v. State*, 126 Md. 239 (1915) (representing the only reported decision we could find that involves a criminal prosecution for adultery). The significance of adultery within Maryland criminal law has diminished over time in other ways as well. For example, a criminal defendant could at one time claim that his or her spouse's adultery was legally adequate "provocation" to "reduce a homicide from murder to manslaughter," *Dennis v. State*, 105 Md. App. 687, 695-96 (1995), but the General Assembly has since repudiated that common law rule. *See* CR § 2-207(b) (providing now that "[t]he discovery of one's spouse engaged in sexual intercourse with another does not constitute legally adequate provocation"). Nevertheless, adultery remains an important concept in Maryland family law, and the answer to your question thus has significant real-world implications for Maryland families in that context.

## B.    *The History of Adultery as a Legal Concept*

The development of adultery as a legal concept in England and the United States provides useful guidance about how courts might view the concept today. Adultery was not a crime under English common law. Peter Nicolas, *The Lavender Letter: Applying the Law of Adultery to Same-Sex Couples and Same-Sex Conduct*, 63 Fla. L. Rev. 97, 106 (2011). Rather, it was a common law tort that was intended to protect men—and only men—from having their bloodlines "adulterate[d]." *Id.* at 107. The fear was that, "if a married woman were to be secretly impregnated by a third party male, the husband's issue would be severely tainted." *S.B. v. S.J.B.*, 258 N.J. Super. 151, 154 (1992). In other words, if a man had "intercourse with a married woman," it might trick her unsuspecting husband into "support[ing] and provid[ing] for another man's" child. *State v. Lash*, 16 N.J.L. 380, 388 (1838). English courts therefore allowed an aggrieved husband to recover

damages from the man who had an affair with his wife. Nicolas, *supra*, at 106.

Not surprisingly, the common-law definition of adultery reflected this highly gendered purpose: Adultery referred only to sexual intercourse between a married woman and a man who was not her husband. *See, e.g.*, *Evans v. Murff*, 135 F. Supp. 907, 911 (D. Md. 1955). A married man was thus free to engage in sexual intercourse with an *unmarried* woman without committing adultery under the common law. In that situation, the parent or guardian of the unmarried woman could instead sue the married man for the lesser tort of fornication. *See Lash*, 16 N.J.L. at 384, 387.

England's ecclesiastical courts, which had jurisdiction over divorce and alimony proceedings, saw adultery through a different lens. They "viewed the evil of extramarital sex" as "its breach of the marital vows and the attendant unhappiness and demoralization that it caused." Nicolas, *supra*, at 107. The canon law definition of adultery reflected this broader purpose. The ecclesiastical courts defined adultery to include sexual intercourse between any married person—not just a woman—and "someone other than his or her spouse." *United States v. Hickson*, 22 M.J. 146, 147 (Ct. Mil. App. 1986); *see also State v. Bigelow*, 88 Vt. 464, 92 A. 978, 979 (Vt. 1915); *State v. Holland*, 162 Mo. App. 678, 145 S.W. 522, 523 (Mo. Ct. App. 1912); *Lash*, 16 N.J.L. at 389-90. The "someone other" in the affair, if married, was also guilty of adultery, while, if unmarried, he or she was guilty only of fornication. *Hickson*, 22 M.J. at 147.[1]

English colonists brought this legal tradition with them to North America. In fact, some colonies went further than the common law, making adultery a criminal offense. *See* Martin J. Siegel, *For Better or for Worse: Adultery, Crime & the Constitution*, 30 J. Fam. L. 45, 48 (1992). In addition to the common-law purpose of protecting men from raising other men's children, it appears that these early American criminal laws may

---

[1] Given the era in which the canon law operated, that "someone other than his or her spouse" typically referred to someone of the opposite sex. *See, e.g.*, *Holland*, 145 S.W. at 523 (explaining the definition of adultery under the canon law as the "sexual connection *between a man and a woman*, one of whom is lawfully married to a third person; and the offense is the same whether the married person in the adulterous connection is a man or a woman" (emphasis added)).

also have been intended, at least in part, to "safeguard[] community morals." *Id.* Many other colonies and, later, states also enacted criminal statutes. Some of these statutes expressly adopted the common law definition, some expressly adopted the canon law definition, some adopted a hybrid of the two definitions, and some, like Maryland, simply prohibited adultery without defining it. *See* Nicolas, *supra*, at 108-09 (citing Marvin M. Moore, *The Diverse Definitions of Criminal Adultery*, 30 U. Kan. City L. Rev. 219, 222 (1962)).

It appears that Maryland's first criminal prohibition against adultery was enacted in 1650. *See* 1650 Acts of the Proprietary Assembly, ch. 1. The law provided merely that "[e]very person or persons that shall be found or proved . . . to have committed adultery, or fornication, such offender or offenders shall be censured or punished as the Governor and Council or other chief Judge and Commissioner present in Court . . . shall adjudge and think fit." *Id.* (language modernized). Although the law was changed in 1715 to penalize adultery with a fine of £3 or 1,200 pounds of tobacco, or a whipping of no more than 39 "stripes," *see* 1715 Acts of the Royal Assembly, ch. 27, it still did not specifically define the term. *See also Miles v. State*, 435 Md. 540, 561-62 (2013) (summarizing 1715 legislation).

Over time, states largely moved away from the gender-specific common law definition. Most states appear to have adopted the broader canon law definition in the family law context, which makes sense given that this definition had governed divorce and alimony proceedings in England. *See, e.g.*, *Evans*, 135 F. Supp. at 911 (explaining that, unlike under the common law, "[t]he term 'adultery' in divorce law in this country includes the act of a married man who has intercourse with a single woman"). As explained further below, Maryland is one of these states. *See Flood v. Flood*, 24 Md. App. 395, 396 n.1 (1975). Similarly, in the criminal context, many states have replaced their former common law definitions with ones that are not gender-specific or have repealed their criminal prohibitions altogether. *See* Nicolas, *supra*, at 100, 108-09.

More recently, states have begun to answer the question you ask, namely, whether "adultery" is confined only to vaginal intercourse between a man and a woman or whether it also encompasses other sexual acts—either between a man and a woman or between two persons of the same sex. Courts in other states have reached conflicting results in this area. *See, e.g., In re Blanchflower*, 150 N.H. 226, 227 (2003) (concluding that adultery is limited to vaginal intercourse); *Glaze v. Glaze*, 46 Va. Cir. 333

(1998) (same); *S.B.*, 258 N.J. Super. at 157 (holding that, under New Jersey law, adultery includes same-sex sexual infidelity); *RGM v. DEM*, 306 S.C. 145, 149 (1991) (same); *Menge v. Menge,* 491 So.2d 700 (La. App. 5th Cir. 1986) (holding that sexual acts other than vaginal intercourse between members of opposite sex constituted adultery); *see also Doe v. Doe*, 186 S.C. 507, 509-10 (S.C. Ct. App. 1985) (declining to reach the issue, but discussing the "mixed results" in other states).

## II

## Analysis

Maryland's appellate courts have not yet had the opportunity to decide whether extramarital sexual infidelity between two persons of the same sex constitutes "adultery" under Maryland family law.[2] The Court of Special Appeals has suggested that "a pattern of homosexual activity" on the part of one spouse might constitute constructive desertion for purposes of divorce, but it did not address whether that activity might also constitute adultery. *See Richardson v. Richardson*, 17 Md. App. 665, 670 (1973). To our knowledge, the only Maryland court that has addressed the issue is the Circuit Court for Montgomery County, which held that extramarital same-sex conduct constituted adultery for purposes of divorce. *See Schadegg v. Schadegg*, Civil No. 159529, slip op. at 2-3 (Mont. Cnty. Cir. Ct. Aug. 15, 1997). Circuit court decisions, however, lack precedential effect. *Dep't of Health & Mental Hygiene v. Dillman*, 116 Md. App. 27, 41-42 (1997).

Maryland appellate courts have also not yet resolved the closely related issue of whether adultery under FL § 7-103 encompasses only vaginal intercourse, which in the criminal law context seems to be defined as sexual intercourse between a man and a woman. *See, e.g.,* CR § 3-301(g). Some older cases include dicta along the lines of "nothing less than the carnal act itself can

---

[2] As noted above, we focus on the definition under the Family Law Article, rather than the criminal statute, because the criminal statute is apparently no longer enforced in Maryland. The only situation in which the criminal statute might still be relevant is when a witness attempts to invoke the Fifth Amendment protection against self-incrimination to avoid admitting possible adultery. *See Payne v. Payne*, 33 Md. App. 707, 714 (1976) (permitting a husband to invoke the Fifth Amendment when it was "unclear" under Maryland law whether the crime of adultery "embraces the common law or canon law definition").

lay the foundation of a divorce for adultery," *see, e.g.*, *Pohzehl v. Pohzehl*, 205 Md. 395, 405 (1954), but a more recent case suggests that our appellate courts have not yet determined whether adultery is limited to coition, even in the criminal context. In that context, the Court of Special Appeals concluded that the definition of "sexual intercourse" offered by a murder defendant—"sexual intimacy" or "significant sexual conduct"—was "much too general" to serve as the legal standard for permitting the defendant to prove legally adequate provocation. *Dennis*, 105 Md. App. at 698. The court declined, however, to decide whether sexual intercourse "might properly include *any* conduct other than coition." *Id.* (emphasis in original). We are thus left to interpret the term "adultery," as it appears in FL § 7-103, using the familiar principles that guide our construction of Maryland statutes.

The "cardinal rule" of statutory interpretation "is to ascertain and effectuate legislative intent." *Mayor and City Council of Baltimore v. Chase*, 360 Md. 121, 128 (2000) (quotation marks and citation omitted). To achieve this objective, we begin our analysis with "the plain language of the statute," *La Valle v. La Valle*, 432 Md. 343, 355 (2013), but we also look to other indicia of legislative intent, including the purpose of the statute. *Baltimore County v. RTKL Assocs.*, 380 Md. 670, 678 (2004). We must also keep in mind that statutes should generally be construed to avoid doubts as to their constitutionality. *See, e.g.*, *Koshko v. Haining*, 398 Md. 404, 425 (2007).

## A. *The Plain Language*

The plain language here does not provide a clear answer to your question. The General Assembly has not defined the term "adultery" in either the Family Law Article or the Criminal Law Article. *See* FL §§ 1-101, 7-103; CR §§ 1-101, 10-501. Moreover, although most dictionary definitions of adultery might be broad enough to encompass sexual activity other than vaginal intercourse, they tend to use general terms and do not address the issue squarely. *See*, *e.g.*, Webster's Encyclopedic Unabridged Dictionary of the English Language 28, 1755 (1996) (defining "adultery" to mean "voluntary sexual intercourse between a married person and someone other than his or her lawful spouse," and then defining "sexual intercourse" to mean "genital contact, esp. the insertion of the penis into the vagina . . .; coitus, copulation").

The New Hampshire Supreme Court relied on a similarly imprecise dictionary definition to conclude that adultery did *not* include same-sex sexual infidelity because, in the court's view, adultery requires "sexual intercourse" and sexual intercourse

typically means coitus. *See Blanchflower*, 150 N.H. at 227. For a number of reasons, we do not believe that the plain meaning of adultery under Maryland law is similarly limited. As the federal district court for the District of Maryland explained as far back as 1955, "the popular meaning" of adultery "has come to be 'sexual unfaithfulness of a married person,'" *Evans*, 135 F. Supp. at 911 (quoting Webster's New International Dictionary), and we suspect that the popular meaning of adultery among Americans today remains similarly broad. *See* Bethany Catron, Note, *If You Don't Think This Is Adultery, Go Ask Your Spouse: The New Hampshire Supreme Court's Faulty Interpretation of Adultery*, 30 U. Dayton L. Rev. 339, 339-40 (2005) (arguing that the New Hampshire Supreme Court's definition of adultery does "not represent today's understanding").

Moreover, even if we assume that adultery requires "sexual intercourse," it is not entirely clear that sexual intercourse is always limited to vaginal intercourse under Maryland law. The General Assembly has not defined sexual intercourse in the context of adultery, and, in other areas, it has used the term differently in different statutory schemes. Under rape and incest statutes that at one time used the phrase "carnal knowledge," Maryland courts explained that "carnal knowledge" meant "sexual intercourse" and, in that context, both terms meant "actual contact of the sexual organs of a man and woman and an actual penetration into the body of the latter." *Scott v. State*, 2 Md. App. 709, 711 (1968) (quoting *Robert v. State*, 220 Md. 159, 164 (1959)); *see also* 2002 Md. Laws, ch. 26 (Revisor's Note to CR § 3-321, observing that "the appellate courts of the State have determined that 'carnal knowledge' and 'sexual intercourse,' defined in this subtitle as 'vaginal intercourse,' are synonymous").

Outside the context of sexual crimes, however, the term "sexual intercourse" has various meanings under Maryland law. For example, in a 2014 statute criminalizing revenge pornography, the Legislature provided that the term "sexual contact" means "sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex." CR § 3-809(a)(3). This implies that "sexual intercourse" includes at least some non-coital acts. By contrast, a provision dating from 1993 that governs adult entertainment in Baltimore City distinguishes among "sexual intercourse," "sodomy," and "oral copulation," implying that the term "sexual intercourse" is limited to vaginal intercourse. *See* Md. Code Ann., Art. 2B § 12-203(a)(2)(i); 1993 Md. Laws, ch. 426.

Finally, the term "sexual intercourse" appears only once in the Family Law Article, in a provision governing personal jurisdiction to determine the parentage of a child or to establish or enforce a child support order. The provision reads: "[T]his state may exercise personal jurisdiction over a nonresident individual if . . . the individual engaged in sexual intercourse in this State and the child may have been conceived by that act of intercourse." FL § 10-304(a)(6). This language also does not provide much guidance. The statute applies only to acts of sexual intercourse that can produce a child because the statute involves child support proceedings, but it does not necessarily mean that other acts are *not* sexual intercourse. The General Assembly simply had no need to decide whether those other acts would qualify.

In sum, even if we were to assume that adultery always requires "sexual intercourse," the General Assembly has never categorically limited the meaning of "sexual intercourse" under Maryland law to vaginal intercourse. To the contrary, it has implied that, at least under some circumstances, the term is much broader. *See* CR § 3-809(a)(3) (revenge pornography). We thus cannot define adultery as used in Maryland's divorce statute based solely on the plain meaning of the term and must turn to the statute's purpose for additional guidance. *See RTKL Assocs.*, 380 Md. at 678.

### B.    *Statutory Purpose*

As explained above, the purpose of adultery as a legal concept under the English common law differed dramatically from its purpose under English canon law. Although Maryland's courts have never "decided whether the crime of adultery . . . embraces the common law or canon law definition," *Payne*, 33 Md. App. at 714,[3] the canon law definition is the only relevant one in the domestic relations context because it governed divorce and alimony proceedings in England at the time of our Independence. English "canon law" as it applied to "this branch of matrimonial causes . . . became a part of the common law, and as such is recognized and adopted by the declaration of rights and Constitution of this State as part of the law of the land." *Childs v.*

---

[3] In 1955, a federal district court, applying Maryland law, hypothesized that Maryland likely intended to adopt the common law definition for purposes of its criminal statute because "anticlerical feeling was high" in the State at the time the law was enacted. *Evans*, 135 F. Supp. at 911. But Maryland law governs in this context, and *Payne* later made clear that the Maryland courts have not yet made that decision in the criminal law context.

*Childs*, 49 Md. 509, 514 (1878); *see* Md. Decl. of Rights § 5 (providing that "the Inhabitants of Maryland are entitled to the Common Law of England"). The Court of Appeals accordingly made clear as early as 1870 that divorce proceedings "should be governed by the principles of the English ecclesiastical courts insofar as those principles were consistent with Maryland statutes." *Thomas v. Thomas*, 294 Md. 605, 611 (1982) (citing *J.G. v. H.G.*, 33 Md. 401, 406-07 (1870)).

It comes as little surprise, therefore, that the Court of Special Appeals has explicitly adopted the broad canon law definition for purposes of Maryland's divorce statute, concluding that "'adultery' as used in the divorce statute is not restricted to its common law meaning but has the more general meaning of voluntary sexual intercourse between a married person and a partner other than the lawful husband or wife." *Flood*, 24 Md. App. at 396 n.1. Although the court in *Flood* did not directly address whether "voluntary sexual intercourse" included sexual acts other than coitus or encompassed sexual infidelity between persons of the same sex, we see no logical reason in the family law context to limit the definition so as to exclude those acts.

As the Court of Appeals has recognized, the purpose of the prohibition on adultery in the English ecclesiastical tradition was "to devise some means to punish the offending party" for "a flagrant breach of the marriage vow" and "to relieve the innocent one from the ties of a contract so incontestably violated." *Ridgley v. Ridgley*, 79 Md. 298, 301 (1894). This purpose is implicated to the same degree whether the offending spouse has sex with a man or a woman. After all, "[a]n extramarital relationship . . . is just as devastating to the [injured] spouse irrespective of the specific sexual act performed by the promiscuous spouse or the sex of the new paramour." *S.B.*, 258 N.J. Super. at 156.

The Circuit Court for Montgomery County made essentially the same point in *Schadegg*, holding that "extramarital homosexual affairs violate the same trust as extramarital heterosexual affairs," and "to opine otherwise would be to promote form over substance, the victimizer over the victim, and fiction over fact." *Schadegg*, slip op. at 2-3. The circuit court also rejected an argument based on the old, common law view of adultery. The court reasoned that it did not matter that "homosexual affairs cannot produce bastardly offspring" because this "distinction" might have been "relevant for feudal dowry or issues of inheritance" but was of "no consequence" in the modern era. *Id.* Although the court acknowledged that

"traditional notions of sexual intercourse" might normally require "inter-gender organ penetration," it noted that this narrow definition "ignores the evolution of adultery" and also ignores that a same-sex affair "damages the foundations of the marriage" in the same way as do all extramarital affairs. *Id.*

We agree with the circuit court's reasoning. To begin with, it is consistent with the Court of Appeals' long-held view that the goal of the divorce statute is "to relieve the innocent one from the ties of a [marriage] contract" that has been "so incontestably violated." *See Ridgley*, 79 Md. at 301. It is also consistent with the majority of the decisions of other states' courts that have addressed the question of whether same-sex extramarital conduct constitutes adultery. *See, e.g.*, *S.B.*, 258 N.J. Super. at 156-57; *RGM*, 306 S.C. at 149; *M.V.R. v. T.M.R.*, 454 N.Y.S.2d 779, 783 n.10 (N.Y. Sup. Ct. 1982); *Owens v. Owens*, 247 Ga. 139, 140 (1981); *Patin v. Patin*, 371 So.2d 682, 683 (Fla. Dist. App. Ct. 1979); *Rera v. Rera*, 420 N.Y.S.2d 127 (N.Y. Sup. Ct. 1979); *Adams v. Adams*, 357 So.2d 881, 882-83 (La. Ct. App. 1978); *cf. Dunn v. Contributory Ret. Appeal Bd.*, 46 Mass. App. Ct. 359, 363 (1999) (referring to extramarital same-sex conduct as "adulterous behavior").

Although these decisions from other states involved married couples of the opposite sex who committed sexual acts with persons of the same sex, we think their conclusions carry just as much weight in the context of same-sex marriages, particularly now that marriage equality is the law of the land. *See Obergefell v. Hodges*, 135 S. Ct. 2584 (2015). Given that same-sex couples have the right to marry on equal terms with opposite-sex couples, it makes little sense to say that same-sex infidelity does not constitute a breach of the marriage vow. It makes even less sense to conclude that same-sex sexual infidelity does not constitute adultery for purposes of FL § 7-103 when that interpretation would make it nearly impossible for same-sex couples to qualify for divorce on that ground. The enactment of the Maryland's Civil Marriage Protection Act in 2012, *see* 2012 Md. Laws, ch. 2, was intended to ensure that same-sex couples were treated equally under the State's marriage laws, and a narrow reading of adultery in this context would run counter to the express goal of this more recent enactment.[4] "To strictly adhere to" an outdated conception

---

[4] We recognize that, in 1998, a bill proposing to clarify that adultery includes sexual acts other than coitus was rejected. *See* 1998 Leg. Sess., H.B. 15. But we decline to read much into the rejection of this legislation. Legislative intent usually cannot be reliably "drawn from the

of adultery in this context "is to avert one's eyes from the sexual realities of our world." *See Blanchflower*, 150 N.H. at 230 (Brock, C.J. & Broderick, J., dissenting).

What is more, only a handful of cases in other states have come to the opposite conclusion. Those cases rely primarily on out-of-context definitions of "sexual intercourse" from criminal statutes or vague, generally-worded dictionary definitions. *See In re Blanchflower*, 150 N.H. at 227 (relying on ambiguous dictionary definition under New Hampshire law); *Glaze v. Glaze*, 46 Va. Cir. at 333 (relying on Virginia criminal law); *Cohen v. Cohen*, 103 N.Y.S.2d 426, 427-28 (N.Y. Sup. Ct. 1951) (relying on New York criminal law). The most recent of these cases, *Blanchflower*, is distinguishable on other grounds as well. In that case, the New Hampshire Supreme Court based its decision in part on the fact that, under that state's divorce law, the adultery provision was premised on a "specific act" and was not "based upon the fundamental concept of marital loyalty and public policy's disfavor of one spouse's violation of the marriage contract with another." 150 N.H. at 228-29. Here in Maryland, however, the Court of Appeals has for more than 140 years recognized precisely the opposite; the prohibition of adultery within the Maryland family law context *is* based upon the concept of marital loyalty. *See Ridgley*, 79 Md. at 301. We therefore do not think that the Court of Appeals would find *Blanchflower* or the other out-of-state cases persuasive in interpreting Maryland law.

---

subsequent failure of the General Assembly to enact proposed legislation." 77 *Opinions of the Attorney General* 110, 115 (1992). This is because "several equally tenable inferences could be drawn from the failure . . . to adopt an amendment . . . including the inference that the existing legislation already incorporated the offered change." *Id.* (quoting *United States v. Wise*, 370 U.S. 405, 411 (1962)). Indeed, here, there are at least two reasons why the Legislature may have rejected the bill that do not conflict with our interpretation of the statute. First, the General Assembly was aware of the 1997 Montgomery County Circuit Court decision and may have thought that the courts were correctly interpreting the statute as written. Second, a contemporaneous press account of the hearing indicates that the members may have been more concerned about another aspect of the bill—a controversial proposal to decriminalize adultery—and the bill may have been rejected for that reason. *See* Marquita Smith, *Pols Asked to Modernize Adultery Law*, Montgomery Journal (Jan. 29, 1998).

We recognize that a broader definition of adultery might force the courts to draw some uncomfortable new lines. A definition of adultery like "extramarital intimate sexual activity with another," for example, might require "judges and masters to decide just what individual acts are so sexually intimate as to meet the definition." *See Blanchflower*, 150 N.H. at 229. But we do not believe that it would be nearly as difficult to draw those lines as the New Hampshire court feared. One option, for instance, might be to rely on the definition of "sexual intercourse" from Maryland's recently-enacted revenge pornography statute, which may well reflect the General Assembly's current views on the topic. *See* CR § 3-809(a)(1)(3) (specifically including "genital-genital, oral-genital, anal-genital, or oral-anal" as types of "sexual intercourse"). Although we do not purport to choose a specific definition on behalf of the Legislature or the courts, a definition along these lines seems workable and would be consistent with the purpose of the statute.

Furthermore, and perhaps most importantly, a plaintiff in a divorce action is not required to provide direct evidence of the sexual act; it is sufficient to establish by circumstantial evidence that the sexually unfaithful spouse and his or her paramour had the "disposition" and "opportunity" to commit adultery. *See, e.g.*, *Pohzehl*, 205 Md. at 406; *Meininger v. Meininger*, 198 Md. 432, 434 (1951) (explaining that there need not be "direct proof of actual intercourse"); *see also Blanchflower*, 150 N.H. at 231 (Block, C.J. and Broderick, J., dissenting) (making a similar point under New Hampshire law). A spouse seeking a divorce based on opposite-sex infidelity therefore usually does not need to prove any details about specific sexual acts.

We see no reason under the statutory scheme why a spouse whose partner had an affair with someone of the same sex would have to meet a higher burden by proving such details. As in the context of opposite-sex adultery, once the court finds that at least some type of sexual activity between two persons of the same sex constitutes adultery, the question as to which specific acts suffice will often be academic. The admission that the accused adulterer engaged in one sexual act, for instance, might provide circumstantial evidence that he or she had the disposition and opportunity to engage in others. It seems unlikely that the Legislature would have intended to allow a party to "defend against an adultery charge [in a divorce proceeding] by arguing that, while he or she engaged in intimate sexual activity with another, the relationship was not adulterous because it did not involve coitus."

*See Blanchflower*, 150 N.H. at 233 (Block, C.J. and Broderick, J., dissenting).

We accordingly conclude that Maryland courts will likely define adultery, at least in the family law context, to encompass more than just vaginal intercourse between a man and a woman. In our view, the courts will define adultery to include other types of sexual infidelity, both between persons of the opposite sex and between persons of the same sex. The General Assembly, to erase any doubt on the matter, could always clarify the definition through legislation, but we think that FL § 7-103 as it currently reads would encompass same-sex sexual infidelity.

## C.    *The Need to Avoid Constitutional Questions*

The conclusion we reach also avoids a potential constitutional question as to whether defining adultery to exclude same-sex infidelity discriminates on the basis of sexual orientation in violation of the Equal Protection Clause. *See, e.g.*, *Koshko*, 398 Md. at 425 (explaining that, if at all possible, Maryland courts will usually construe statutes to avoid constitutional questions). Over the last few decades, the Supreme Court has looked with increasing skepticism upon laws that discriminate against gays and lesbians. *See Romer v. Evans*, 517 U.S. 620 (1996) (striking down a state constitutional amendment that prohibited any state entity from enacting any law or instituting any policy to grant protected status to gays, lesbians, and bisexuals); *Lawrence v. Texas*, 539 U.S. 558 (2003) (striking down a Texas statute criminalizing sodomy); *United States v. Windsor*, 133 S. Ct. 2675 (2013) (striking down the federal Defense of Marriage Act ("DOMA")).

More recently, the Supreme Court held that same-sex couples have a fundamental right to marry and struck down state laws prohibiting same-sex marriage "to the extent they exclude same-sex couples from civil marriage *on the same terms and conditions as opposite-sex couples*." *Obergefell*, 135 S. Ct. at 2604-05 (emphasis added). The right to civil marriage would ring hollow if states could treat same-sex married couples differently than opposite-sex ones, providing special benefits to, or imposing special burdens on, one category but not the other. As the Court emphasized, "[s]ame-sex couples seek in marriage *the same legal treatment* as opposite-sex couples, and it would disparage their choices and diminish their personhood to deny them this right." *Id.* at 2602 (emphasis added); *see also Lawrence*, 539 U.S. at 575 (disavowing the Court's own precedent on the validity of a sodomy

law as "demeaning to the lives of homosexual persons"); *Windsor*, 133 S. Ct. at 2693 (finding that DOMA "interfere[d] with the equal dignity of [same-sex] marriages").

We think an overly narrow definition of adultery that excludes same-sex sexual activity, and makes it more difficult for same-sex couples to divorce, may raise similar constitutional problems. *See* Nicolas, *supra*, at 126 (a narrow definition based on the common law concept of adultery "demeans the value of same-sex relationships" by suggesting that it is not important to "protect their formal, legal relationships from the harms associated with adulterous conduct"). We need not decide, however, whether a court would ultimately find a constitutional violation if adultery were limited to sexual activity between a man and a woman. Rather, the point is that there is a legitimate question as to the constitutionality of defining adultery to exclude same-sex sexual activity, and this makes it even more likely that Maryland courts would choose a broader definition. *See Koshko*, 398 Md. at 425.[5]

### III

### Conclusion

We conclude, for purposes of Maryland family law, that the term "adultery" includes a spouse's extramarital sexual infidelity with a person of the same sex. In our view, this conclusion is compelled not only by the broad purposes behind the concept of adultery in the family law context, but also by the respect and dignity owed to same-sex marriages as equal to opposite-sex marriages under State law. We see no reason either to define adultery so narrowly as to ignore "the sexual realities of our world," *see Blanchflower*, 150 N.H. at 230 (Brock, C.J. & Broderick, J.,

---

[5] Although we have not addressed the meaning of "adultery" under our State's criminal law, we note that the analysis might be different in that context because Maryland's courts have not determined whether the criminal statute adopted the common law or canon law definition of adultery, *see Payne*, 33 Md. App. at 714, and because the "rule of lenity" requires courts "to construe ambiguous criminal statutes in favor of criminal defendants," *Alexis v. State*, 437 Md. 457, 484-85 (2014). That said, these same constitutional concerns would apply in the criminal context, and we think that the narrow common law purpose behind adultery laws has become less important in recent years. *See* Nicolas, *supra*, at 110-11. Still, if the General Assembly is concerned about the application of the criminal prohibition against adultery to same-sex couples, it may wish to consider amending the statute or repealing it altogether.

dissenting), or to deny same-sex couples the ability to divorce on the same terms as other married couples.

> Brian E. Frosh
> Attorney General of Maryland
>
> Patrick B. Hughes
> Assistant Attorney General

Adam D. Snyder
Chief Counsel, Opinions & Advice